CITY OF HOUSTON et al., Appellants,

v.

Foy D. MELTON, Appellee.

No. 13682.

Court of Civil Appeals of Texas.

Houston.

May 25, 1961.

Rehearing Denied June 15, 1961.

**644**

R. H. Burks, City Atty., and Charles A. Easterling, Sr. Asst. City Atty., Houston, for appellants.

Sam S. Minter, Houston, for appellee.

BELL, Chief Justice.

Appellee was indefinitely suspended by the Chief of Police of the City of Houston from his position as Inspector of Police, the suspension being made October 20, 1959. He appealed to the Civil Service Commission and that body upheld the suspension. He appealed to the District Court of Harris County and the court ordered his reinstatement and rendered judgment against the City for accumulated salary.

On October 20, 1959, the Chief of Police wrote his letter of suspension to appellee stating that the suspension was for acts and conduct that constituted violations of 10 specified subdivisions of Section 6, Rule 13, of the Firemen's and Policemen's Civil Service Rules. Then followed the allegations of the various specific acts on which the Chief based his action. This was in compliance with the requirements of Article 1269m, Section 16, Vernon's Ann.Tex.Civ. St., which prescribes that the written statement of the department head shall not only point out the Civil Service Rule violated, but shall also allege the acts of the employee which it is contended violate such rule. The substance of the specific acts alleged is as follows:

1. That appellee contacted P. Y. Snow, brother of Billy D. Snow, and requested P. Y. Snow to talk to Billy D. Snow concerning the testimony Billy D. Snow would give at the trial of the case of Milner v. National Airlines, D.C.S.D.Tex., 23 F.R. D. 7. Melton on such occasion made a statement to the effect that if Billy D. Snow would change his testimony so as to testify that Milner was sober, Billy D. Snow would be paid three, four or five hundred dollars. Also on such occasion Melton stated Snow could easily change his testimony because the City of Houston case (charge of drunkenness had been disposed of and it was a known fact that Milner had a cardiac condition and Snow could testify that Milner was not drunk but was under the influence of some medicine he was using.

2. That Melton attempted to intimidate William Hill, Jr., a police officer, by calling

Hill to Melton's office and requiring Hill to discuss, in the presence of Milner, the facts connected with Milner's arrest and the proceedings that occurred between Hill and Snow on the occasion of Milner's being arrested and placed in jail. Hill was asked numerous questions by Milner. Melton stated the Airline employees had given depositions that they did not point out anybody to be arrested and did not ask that charges be filed against Milner and the employees were trying to put the monkey on the officers.

3. That on or about October 6, 1959, Melton made a false statement under oath in that he stated that at no time between November 19, 1957 and October 6, 1959, had he called Billy D. Snow to his office to talk to him concerning the Milner case. Also Melton falsely stated he had not, between the above dates, had any conversation with Snow about the Milner case.

4. That at the trial of Milner's case in the United States District Court Melton falsely testified he had never attempted to influence anyone's testimony concerning the Milner case and he had not offered any money, favor or gift to any police officer in exchange for testimony to the effect that Milner was not drunk on November 19, 1957.

5. That on October 6, 1959 Melton made a false statement under oath when he stated he never at any time between November 19, 1957, and October 6, 1959, offered Billy D. Snow or anyone else any money to testify falsely in the Milner case.

6. That Melton at various times did commit an unlawful act by attempting to influence and tamper with a witness or witnesses who had been subpoenaed in the Milner case.

7. That Melton falsely testified in the trial of the Milner case that on November 19, 1957, when Milner was arrested and put in jail, Milner was not drunk and had not been drinking but was under the influence of medicine he was taking for a

coronary condition. Too, Melton falsely testified he had not discussed with officers, Snow, Hill or Nicholson how they would testify.

8. Melton tried to get Officer Hill to testify falsely in the Milner case to the effect that on November 19, 1957, Milner was not under the influence of alcohol but appeared to be under the influence of medicine he was taking for a heart ailment.

9. Melton shirked his duty when he released or caused Milner to be released from jail while Milner was drunk.

It should here be noted that on October 19, 1959, the Chief of Police wrote Melton a letter of suspension that was the same in content as the letter of October 20 except the letter of the 19th did not include specifications 7, 8 and 9, the substance of which has been above stated. However, the letter of October 19, while it was delivered to Melton, was never filed with the Civil Service Commission. The letter of October 20 was filed with such Commission within the time required by Article 1269m, Sec. 16, V.A.T.S. Too, the order of the Civil Service Commission dismissed specification 9 because the alleged act did not occur within 6 months of the date of the Chief's letter of suspension. Specifications 7 and 8 were dismissed before conclusion of the hearing before the Commission when the City Attorney admitted there was no evidence to support the allegations.

The Civil Service Commission entered its order sustaining the suspension. We think only a part of the order is of significance in disposing of this appeal and will quote only such part.

After reciting the dismissal of Specifications 7, 8 and 9, and the fact of the hearing, the order provides:

"Thereupon this Civil Service Commission and its members duly considered and discussed among and between themselves (with no other person present or participating) all of the testimony adduced upon said hearing and

conferred between themselves with respect thereto. Testimony given by a few witnesses on *both sides* gives rise to some doubt as to whether our Commission received from them 'the truth, the whole truth and nothing but the truth.' On the other hand, most of the witnesses gave their testimony in a clear and convincing manner, and the evidence as a whole leaves no doubt in our minds as to the *substance* of the issues. Based on such evidence, as well as upon the appearance and demeanor of the witnesses while testifying, we have no doubt that the said Foy D. Melton was guilty of improper and wrongful conduct, well within said specifications remaining before us."

Following this there is the paragraph upholding the suspension and making the dismissal permanent.

On appeal to the District Court appellee complained of the action of the Civil Service Commission on the following grounds:

1. The Civil Service Commission should have immediately reinstated Melton because he was suspended by the letter of October 19 and it was not filed with the Civil Service Commission within 120 hours after the suspension as required by Article 1269m, Sec. 16, V.A.T.S. The letter of October 20, while filed with the Commission, was an amendment of the charges in the letter of October 19, and under said Article 1269m, Sec. 16, the department head is limited to the original charges and no amendments are possible.

2. The order of the Civil Service Commission was ineffective as a dismissal of appellee because it failed to make any finding of the truth of the specific charges as is required by Article 1269m, Sec. 16.

3. The charges were not reasonably supported by substantial evidence.

The trial court filed his conclusions of law, concluding in substance as follows:

1. The letter of October 20 was not the original statement of the Chief of Police of the reasons for appellee's suspension, but was an amendment of them, which is not permitted by Article 1269m, Sec. 16.

2. The Commission's order wholly failed to find the truth of any of the specific charges, when Article 1269m, Sec. 16, requires such finding before there may be dismissal of an employee.

3. None of the charges was reasonably supported by substantial evidence. The court was of the view that the evidence tending to support the charges was incredible and that incredible evidence was not substantial evidence.

We are of the view that the trial court was in error in concluding that the letter of October 20 was an amendment and not the original statement within the meaning of Article 1269m, Sec. 16. We are also of the view that the trial court was in error in concluding there was no substantial evidence reasonably supporting the charges, because we are of the view that there was substantial evidence to support all of the specifications except No. 2. However, we are of the view that the judgment of the trial court must be affirmed because the Civil Service Commission failed to make findings with regard to the truth of the specific charges as required by Section 16, Article 1269m, V.A.T.S.

Section 16 of Article 1269m, after providing that the written statement of the department head suspending an employee must not only point out the Civil Service rule violated, but must also point out the act or acts complained of as violating such rule or rules, provides that, "No employee shall be suspended or dismissed by the Commission except for violation of the civil service rules, *and except upon a finding by the Commission of the truth of the specific charges against such employee."*

██ . We hold this legislative act requires that before the Commission may sustain a suspension or dismissal of an employee,

its order must in some manner state a finding of the truth of such specific acts charged against the employee as it finds are true under the evidence. The validity of the order is dependent upon a finding of the truth of the specific acts charged.

■ The rule in the United States generally is that the order of an administrative body must in some manner make findings of fact upon which the order is based. This is especially true where a statute in effect so provides. 42 Amer.Jur., Sec. 149, pp. 494–496, Public Administrative Law; 73 C.J.S. Public Administrative Bodies and Procedure § 139, pp. 464–466; 146 A.L.R. 209; Davis, Administrative Law Treatise, Secs. 16.01 and 16.02.

■ The Civil Service Commission is the body that under the law must make a fact determination. The employee is entitled to a fact determination by that body. A court has no authority to make findings of fact. The court can merely determine whether the findings made by the Civil Service Commission are reasonably supported by substantial evidence. Before a court can do this, it must know what fact findings have been made by the Civil Service Commission. The Supreme Court of the United States, in the case of United States v. Chicago, M., St. P. & P. R. R. Co., 294 U.S. 499, 55 S.Ct. 462, 467, 79 L.Ed. 1023, in speaking of the failure of the Interstate Commerce Commission to make clear findings of fact, said: "We must know what a decision means before the duty becomes ours to say whether it is right or wrong." We cannot determine whether a finding of the Civil Service Commission is reasonably supported by substantial evidence until we know what its findings on the specific charges are. We might be of the view, were we the finders of fact, that based on the evidence the employee was guilty of the specific acts charged, yet we have no authority to make such findings, nor does any court. For all we know, the Commission might differ with our views, or a trial court's views. We

cannot presume, even though we should think there is substantial evidence reasonably supporting a specific charge, that just because the Commission sustained the dismissal it found that any particular charge or all of them were true. Thompson v. Railroad Commission, 150 Tex. 307, 240 S.W.2d 759.

The statute also provides an employee may not be suspended or dismissed except for violation of a Civil Service Rule. A court cannot know whether an employee's conduct has violated such a rule until the court knows what conduct he is guilty of as determined by the Civil Service Commission.

While we do not mean to hold that the Commission must necessarily make separate findings on each charge, at least it is required that it make some type of finding that will inform us what charges it found to be true. If here the Commission had made a general finding that all charges were true, this would suffice, or, if it had found all to be true except certain specified charges, it would suffice.

We are unable here to ascertain with certainty whether the Commission found any of the specific charges to be true. It will be helpful if we analyze the pertinent parts of the Commission's order. First, the order states the Commission doubted it got the whole truth from some witnesses on both sides. Second, the order stated most witnesses (apparently on both sides) [parentheses ours] gave their testimony in a clear and convincing manner and the evidence as a whole left no doubt in the minds of the members of the Commission as to the *substance* of the issues. What this means we cannot know with reasonable certainty. It seems to mean the members are not in doubt as to the substance of the issues to be determined. The members knew what matters they must determine. This language is not the equivalent of a finding by the Commission of the substantial truth of the specific charges. Third, the order states that based on the evidence

and appearance of the witnesses as they testified, Melton was guilty of improper and wrongful conduct well within the specifications remaining before the Commission. The statement that Melton was guilty of wrongful and improper conduct is no finding of specific facts. It is a mere conclusion. We do not know whether what the Commission felt was wrongful and improper conduct which it deemed within the specifications was in fact the conduct specified in the charges or not. The Commission may have felt that while Melton was not guilty of the specific charges, his conduct was such that they deemed it improper and wrongful and within the general meaning of the charges as they construed them. There were six specifications remaining. Which one the Commission deemed Melton's improper conduct came within we are not informed. The second specification charged Melton attempted to intimidate Officer Hill. The testimony, however, is not substantial in support of the charge. The testimony merely shows that Melton called Hill to his office and had him relate the facts with regard to Milner's arrest while Milner was present and permitted Milner to ask a few questions. The testimony of Hill himself negatives anything done or said by Melton on such occasion from which anyone could, in our opinion, reasonably infer there was any attempted intimidation of Hill. However, this allegation of attempted intimidation was one of the remaining specifications. We cannot know whether this conduct was what the Commission considered improper and wrongful conduct. If it was, then there is no substantial evidence to support it.

There is too much uncertainty as to what the Commission felt the specific acts were. We are left to guess at what its findings were. More is required by the statute. See Wichita R. & Light Co. v. Public Utilities Commission, 260 U.S. 48, 43 S.Ct. 51, 67 L.Ed. 124.

What the Supreme Court of the United States said in the case of United States v. Chicago, M., St. P. & P. R. Co., supra, is ap-

plicable to the order before us. There the Court had before it the question, in a railroad rate case, of whether there were sufficient findings of fact made by the Interstate Commerce Commission to support its disapproval of a proposed rate reduction by the appellee there. In holding in the negative, the Court said:

"We would not be understood as saying that there do not lurk in this report phrases or sentences suggestive of a different meaning. One gains at places the impression that the commission looked upon the proposed reduction as something more than a disruptive tendency; that it found unfairness in the old relation of parity between Brazil and Springfield; and that the new schedule in its judgment would confirm Milwaukee in the enjoyment of an undue proportion of the traffic. *The difficulty is that it has not said so with the simplicity and clearness through which a halting impression ripens into reasonable certitude. In the end we are left to spell out, to argue, to choose between conflicting inferences.* (Emphasis ours.)

Article 1269m, Sec. 16, has provided for a finding by the Commission of the truth of the specific facts charged as a prerequisite to its authority to suspend or dismiss. The Commission has made no such findings. We must obey the mandate of the statute. If it be thought such requirement should be unnecessary, resort to amendment must be through the Legislature and not this Court.

Appellant has cited Eddings v. Bichsel, Tex.Civ.App., 320 S.W.2d 197, 199, in support of its position that the findings here were sufficient. We do not agree. In that case there was only one charge and the order of the Commission stated the employee had violated the Civil Service Rules as set out in the written statement filed "and for the reasons set forth in said written statement."

Appellant seems to suggest that even if there were no findings the result is that there is merely no final order and the burden is on the employee to obtain from the Commission a final order. It cites Allen et al. v. Crane, Tex.Civ.App., 257 S.W.2d 357, 358, n. r. e. That case differs. Here the order is final in the sense that it dismisses Melton. There the order stated: "Therefore, we are this date instigating procedure to remove you from the Police Department and the payroll." Obviously there was no final determination made by the order. It is forward looking in its content. Further procedure is contemplated.

Appellant next contends the trial court erred in holding the letter of October 20, 1959, was not the original statement of the Chief of Police suspending Melton but was an amendment of the statement of October 19, 1959. The letter of October 19, 1959, a copy of which was never filed with the Civil Service Commission, was the same as the letter of October 20, 1959, that was filed with the Commission except for specifications 7, 8 and 9. The order of the Civil Service Commission expressly shows that specifications 7, 8 and 9 were dismissed. A copy of the letter of October 20, 1959 was also served on Melton.

Article 1269m, Sec. 16, provides in part as follows:

"The Chief or Head of the * * * Police Department * * * shall have the power to suspend indefinitely * * but in every such case the officer making such order of suspension shall, within one hundred and twenty (120) hours thereafter, file a written statement with the Commission, giving the reasons for such suspension, and immediately furnish a copy thereof to the officer or employee affected by such act * * *.

" * * *. It shall not be sufficient for the department head merely to refer to the provisions of the rules alleged to have been violated and in case the department head does not specifically point out the act or acts complained of * * * it shall be the duty of the Commission promptly to reinstate him. In any civil service hearing * * *, the department head is hereby restricted to his original written statement and charges, which shall not be amended, * * *"

■ We are of the view that the above provision providing that in a hearing before the Civil Service Commission the department head shall be restricted to his original written statement and charges which shall not be amended means the original written statement that is filed with the Civil Service Commission by which its jurisdiction is invoked.

It will be noticed on reading the portions of Section 16 above quoted that it is provided an employee may be suspended before any written statement is made. Of course in such case if a written statement of charges is not filed within 120 hours after such suspension the employee would be entitled to immediate reinstatement. However, the above section contemplates that the legally effective charges are only those filed with the Commission. The statute really contemplates a filing of the charges with the Commission first and then service of a copy on the employee.

■ Here the letter of October 20, 1959 was the original written statement within the meaning of the statute and it was timely filed. It was not legally a mere amendment of the letter of October 19. The jurisdiction of the Commission was invoked only by the letter of October 20. Too, in the case before us the charges, one through six, which were exactly the same as those contained in the letters of October 19 and 20, were legally sufficient. There was but an addition of specifications 7, 8 and 9 by the letter of October 20 and they were dismissed by the Commission.

The case of Bichsel v. Carver, 159 Tex. 393, 321 S.W.2d 284, by the Supreme Court,

is not applicable to the facts before us. In that case a written statement of charges was filed with the Civil Service Commission, thus invoking its jurisdiction. Thereafter, at a hearing on an appeal to the Commission, the City conceded the statement was defective in failing to charge that the acts alleged constituted a violation of a Civil Service Rule and the appeal was dismissed by the Commission and the employee was put back to work. Thereafter the defect was corrected. The Supreme Court held this was an amendment of the original written statement that was prohibited by law.

Earlier in this opinion we stated the trial court erred in holding there was no substantial evidence reasonably supporting the "charges". We purposely used that phraseology because we were of the view there was no requisite finding by the Civil Service Commission. Actually a court passes only on whether there is substantial evidence reasonably supporting an administrative body's finding. In the light of our disposition of the appeal, it is unnecessary for us to discuss the evidence. It suffices for us to say that had the Commission made findings finding Melton guilty of the specific acts charged, there is substantial evidence that would reasonably support such findings, except as to specification No. 2.

 Appellant next complains the trial court erred in not admitting into evidence the entire transcript of the testimony given before the Commission. The offer was apparently made because on appeal Melton pled the proceeding before the Commission in the manner in which it was conducted was arbitrary. Too, they say parts of the statement of facts were introduced by appellee.

There was no error, under the circumstances of this case, in excluding the transcript of such evidence. Appellee had in no wise by evidence supported his allegations of arbitrary action by the Commission in its proceedings. While appellee had used parts of such statement of facts for impeachment purposes, that did not make the whole statement admissible. Any other part that would tend to bolster an impeached witness would have been admissible. However, no specific items of previous testimony by an impeached witness were offered by appellants.

 Of course, a statement of the evidence actually taken before an administrative body is not per se admissible, because in an appeal from the action of such a body the material inquiry is not what evidence it heard but whether there is evidence before the trial court of facts in existence at the time of the Commission's order that is of substantial nature that reasonably supports the order. Kavanaugh v. Holcombe, Tex.Civ.App., 312 S.W.2d 399, n. r. e.

The judgment of the trial court is affirmed.