GEORGE W. BICHSEL, CHIEF OF POLICE, ET AL. v.
DUKE CARVER, JR.

No. A-6888. Decided February 18, 1959.
Rehearing overruled March 25, 1959.
(321 S.W. 2d Series 284)

*Carlos C. Cadena,* City Attorney, and *A. W. Worthy,* Assistant City Attorney of San Antonio, for petitioners.

The Court of Civil Appeals erred in holding that a written statement of charges filed with the Firemen's and Policemen's Civil Service Commission may not be made the basis of the suspension of a policeman because another statement of charges based on the same transaction or incident had been filed with the commission previously had been withdrawn. Mulligan v. Dunlap, 108 Fed. Supl., 296; Jones v. Slick, 56 So., 2d 459; Bromfild v. Lexington, 25 S.W. 2d 393.

*Adrian A. Spears,* of San Antonio, for Respondent.

In response cited Heap v. City of Los Angeles, 57 Pac. 2d 1323; City of Amarillo v. Hancock, 239 S.W. 2d 788; City of Dallas v. McDonald, 130 Texas 299, 107 S.W. 2d 987.

MR. JUSTICE GREENHILL delivered the opinion of the Court.

Duke Carver, Jr., a San Antonio policeman, obtained a writ of mandamus compelling George W. Bichsel, the Chief of Police, to reinstate him as a member of the force. The judgment of the trial court was affirmed by the Court of Civil Appeals. 312 S.W. 2d 688. We here affirm the judgments of the courts below.

The Legislature in 1947 enacted a statute which, among other things, prescribes the procedure to be followed upon the suspension of a policeman.[1] It is necessary here to determine the meaning of a part of Section 16 of the Act which says:

"In any Civil Service hearing hereunder, the department head is hereby restricted to his *original written statement and charges, which shall not be amended* * * *." (Emphasis ours).

In September of 1957, Chief Bichsel suspended Carver and served him with charges alleging that he had violated rules of

---

1.—Firemen's and Policemen's Civil Service Act for cities of over 10,000 population, Acts 1947, 50th Legislature, page 550, as amended, being Article 1269m, Vernon's Texas Civil Statutes.

the department. Carver appealed to the Civil Service Commission and there excepted to the legal sufficiency of the charges.

The Commission conducted a hearing on October 16. During the hearing, the attorney for the City conceded that the charges were legally insufficient. He requested permission to withdraw them, stating that Carver would be reinstated and that other charges would be filed against him at a later date. This request was granted.

On the following day, the Chief again suspended Carver and served him with a second set of charges. They alleged virtually the same facts, and the charges were substantially the same as those in the original set. They related to and grew out of the same incident. The difference was this: the original charges alleged violations of *rules of the police department*. The Civil Service Act, in Section 16, says that policemen may be suspended only for violations of *civil service rules*. So the second set of charges alleged violations of certain civil service rules.

A date was set for a hearing before the Commission on the second set of charges against Carver. Before the hearing his counsel went before the District Court. He prayed for an injunction to restrain the Commission from holding the second hearing and a mandamus to compel his reinstatement. Both were granted and that action has been affirmed.

It was Carver's contention that the Civil Service Act means just what it says:

"In any Civil Service hearing hereunder the department head [the Chief] *is hereby restricted to his original written* statement and charges which shall not be amended."

His position was that the second set of charges are really an amendment of the first or original set, and that the statute in unmistakeable terms limits the Chief to his *original* written statement which may not be amended. Hence, he said, the Chief had no authority to bring the second set of charges and the Commission was not authorized to try him thereon.

The City contended that the statute, fairly construed did not prohibit the City from dropping an imperfectly drawn charge and from beginning anew with corrected charges. It argued that the statute prohibits the amendment of the charges *during the trial* before the Commission. It said that the charges were

similar to an indictment which may be quashed and a new one presented later.

The provisions of this statute are unique. None with similar provisions has been cited to us and we have found none. This is therefore a case of first impression.

■ The general rule is that amendment of charges is authorized or permitted when those which are drawn are insufficient.[2] If it were not for the above statute, this would be an entirely different case.

We must agree with Carver and the courts below that the statute *does* limit the Chief to his original written charges which may not be amended. That is what the Act says. It is not contended that the statute is ambiguous, and its validity is not attacked. It is our duty, then, to follow it.

The wisdom of the provision is a legislative matter. The Legislature is now in session; and if that body be dissatisfied with the effect of our construction of the Act, it may take appropriate remedial measures.

In *Austin Fire & Police Departments v. City of Austin,* 149 Texas 101, 228 S.W. 2d 845 (1950), this Court said through Chief Justice Hickman:

"Whether it would be a wise policy for the Legislature to require home rule cities to standardize the wages of their firemen and policemen based solely upon senority, disregarding all other factors, is not for us to decide, but it is our duty to decide whether it has done so by the Act under review."

So here, the wisdom of limiting the Chief to his original written charges and prohibiting amendment thereof is not for the Court to decide. Our question is whether the Legislature has so provided. We think it has. The Legislature may have had in mind the shielding of police and similar employees from harassment which could be accomplished by the filing, dismissal and refiling of charges based upon the same transaction. Such action would result in successive suspensions and thus defeat one of the purposes of the Civil Service Act which is to provide for and protect the rights of persons serving as officers and em-

---

2.—4 McQuillan on Municipal poration (3rd ed., 1949) 344, Section 12.257; *Bromfield v. Lexington,* 233 Ky , 25 S.W. 2d 393 (1930); *People v. Auburn,* 85 Hun. (N.Y.) 601, 33 N.Y.S. 165 95).

ployees of municipal fire and police departments. *City of San Antonio v. Wiley*, 252 S.W. 2d 471, writ ref., n.r.e. (1952).

While the charges do bear some similiarity to an indictment, the analogy cannot sustain the City here. The Texas Code of Criminal Procedure expressly provides that an indictment may be amended as to form at any time before an announcement of ready for trial is made. Art. 533. Fortunately there is no provision which limits the State to its original indictment. Here, however, the Legislature has plainly said that the Chief shall be limited to his *original* written charges which may *not* be amended.

We do not have before us a case in which the change desired or required in the original charges is the correction of a typographical error or a matter of similar nature. Whether the doctrine of *de minimis non curat lex* (the law does not concern itself with small or trifling matters) would apply will have to be determined when such a case arises. The question would be then whether the change is an "amendment" within the meaning of the statute.

Even assuming, however, that the statute does not prohibit the filing of a second set of charges, it contains another limitation. Section 16, after authorizing the Chief to suspend indefinitely any officer, says:

"* * * but *in every such case* the officer making such order of suspension shall, within one hundred and twenty (120) hours, file a written statement with the Commission * * * *."

The alleged misconduct took place on September 8. The original statement and charges of the Chief were served on Carver and filed with the Commission on September 17. They suspended Carver as of September 19, 1957.

The above provisions require that charges *shall* be filed within 120 hours (or within five days) of the suspension. The second set of charges were not filed, however, until October 17, almost thirty days after Carver was suspended. If the new charges be regarded as corrections to the original charges arising out of the same incident, they were invalid under that part of the statute prohibiting amendment of the charges. If they were new "original" charges arising out of the same incident, they came long after 120 hours from Carver's suspension on September 19. They were thus filed too late.

■ We agree also with the Court of Civil Appeals in its holding that a mandamus is a proper remedy in the situation presented. The controlling questions concern the scope of the statutory power of the administrative agency and the meaning of the statutory prohibition against new and amended charges under Section 16 of the Act. Those are judicial rather than administrative questions. 73 C.J.S. 366, Public Administrative Bodies and Procedure, Sec. 46. No question of administrative discretion is involved. All material facts are agreed upon.

Construing this same Act in an earlier mandamus action, this Court said:

"The full performance of all conditions established by the civil service laws is an essential prerequisite to the jurisdiction of the removing body over the subject matter of the removal of an officer." *City of Sherman v. Arnold,* 148 Texas 516, 226 S.W. 2d 620 at 622 (1950).

Since the charges before the Civil Service Board were not legally brought under the statute in question, the Chief of Police was not authorized to remove Carver on them, and the Board had no authority to proceed to uphold his suspension under them.

The judgments of the courts below restoring Carver to duty are affirmed.

Opinion delivered February 18, 1959.

MR. JUSTICE CULVER, joined by JUSTICE GRIFFIN, dissenting.

Reiteration in the majority opinion of the elementary rule that the judicial function does not encompass an inquiry into the wisdom of legislative action would seem to be rather beside the point unless it is by way of apology for what the court deems to be bad law. If given, as I think, the proper interpretation, however, the procedural provision of the statute would conform to the usual and customary practice.

I agree with the majority that the statute limits the Chief to his original charges and that amendment is not permitted, but the question and the only one in the case is what "original written charges" are referred to in the statute. The majority says that these are the first charges preferred by the Chief of Police on which the first suspension was based, and while that

interpretation may not be entirely unreasonable, I think it should not be the accepted interpertation.

That part of Section 16 under consideration[1] reads as follows:

"* * * In any civil service hearing hereunder the department head is hereby restricted to his original written statement and charges, which shall not be amended, and no act or acts may be complained of by said department head which did not happen or occur within six (6) months immediately preceding the date of suspension by the department head. * * *."

All that the statute actually says is, that in a civil service hearing called for the purpose of considering the charges that have been preferred, the charges shall not be amended. The second charge filed here is no more an amendment to the first, than is a petition refiled after nonsuit an amendment to the petition in the former dismissed suit. Thus, in contemplation of this provision, the charge filed after the first charge had been dismissed and after the policeman was restored to duty and paid in full for the time lost, is equally "original." The term "original" when used in pleading and procedure, has acquired somewhat of a technical meaning. Parenthetically it may be said that the term may be discarded there altogether without loss of accurate terminology.

The majority, while conceding some similarity between these charges and a criminal indictment, conclude that the analogy is not sufficient. To my way of thinking it is not only sufficient but compelling. Though Article 533 of the Code of Criminal Procedure, as stated by the majority, does provide that an indictment may be amended as to form, it expressly denies the right to amend so far as any matter of substance is concerned. The State is limited to the charges in the original indictment, substantially, just as the Police Chief is limited by the statute here. But nowhere in the Penal Code or in the Code of Criminal Procedure do I find any authority for a new indictment where the first or "original" has been dismissed. "The right to return a subsequent indictment exists independent of any statute." Stovall v. State, 97 Texas Crim. Rep. 71, 260 S.W. 177. Even the pendency of one indictment does not prevent the grand jury from returning another for the same offense and where a judgment has been reversed because of insufficiency a second may be

---

1.—Art. 1269m, Vernon's Texas Civil Statutes.

returned. 23 Texas Jur., Indictment and Information, Sec. 10. The second indictment for the same offense is in contemplation of the law also an original indictment.

The purpose of the Firemen's and Policemen's Civil Service Law as declared by the Legislature in the act itself, is "to secure to the cities affected thereby efficient police and fire departments composed of capable personnel, free from political influence and with permanent tenure as public employment servants." The members of civil service boards are admonished "to conduct such hearing fairly and impartially, under the provisions of this law and are to render a fair and just decision, considering only the offense presented before them in such hearing."

Let us turn to the record in this case. The statement and charges filed by the Chief of Police on September 17th addressed to respondent, Carver, and to Firemen's and Policemen's Civil Service Commission, read in part as follows:

"This action is taken pursuant to Article 1269m of the Revised Civil Statutes of Texas. You are charged with violations of the Firemen's and Policemen's Civil Service Rules and Regulations for the San Antonio Police Department, which constitute grounds for your suspension. The particular rules you are charged with violating and the acts constituting the violations are as follows:"

The statement and charges then specified violations of Rules 33, 83 and 85 of the rules and regulations for the San Antonio Police Department. The charge brought on October 17th recited that Carver violated "Rule XX, Section 120 of the Personnel Rules of the City of San Antonio applicable to firemen and policemen, providing that the following shall be grounds for removal:

"[one] whose conduct was prejudicial to good order: * * * *

"Violation of any of the rules and regulations of the department, or of special orders, as applicable."

The charges then set forth the violations of the rules and regulations of the police department, namely, Rules 33 and 83, in practically the same language as in the first statement and charges. The facts stated are that about one o'clock in the morning, Carver while off duty and a customer in a tavern or night club, in attempting to arrest another customer, brutally assaulted him by repeatedly striking him in the face with his knee,

repeatedly striking him while on the floor, and repeatedly butting the customer's head against the wall, and all this notwithstanding that another police officer was present who could have assisted in the arrest.

No hearing was had on the first set of charges, at least so far as the merits of the same are concerned. Respondent's counsel excepted to the sufficiency of the charges on the ground that they related to the rules and regulations of the San Antonio Police Department only and failed to allege the violation of any civil service rule. Looking at this as a civil case and taking into consideration the liberality accorded to pleadings in civil cases, I rather doubt the validity of respondent's exception. At any rate the City Attorney, probably out of an abundance of caution, conceded the point and asked for and obtained permission to withdraw the charges. Actually the difference or change between the two charges borders upon what the majority call "small and trifling" matters.

The prescribed procedure is seemingly intended merely to protect the policemen against new charges or changes that might be brought out in the hearing, in almost exactly the same manner in which Article 533 of the Code of Criminal Procedure protects one charged by indictment with a criminal offense. If the statute be interpreted so that a minor and questionable error in draftsmanship would compel the retention on the police force of one who has demonstrated his unfitness, the express purpose of the statute to provide an efficient police department would be defeated to that extent. Where a statute is susceptible of more than one reasonable construction and interpretation, it should be given that which will effect its purpose. Brazos River Conservation and Reclamation Dist. v. Costello, 135 Texas 307, 143 S.W. 2d 577, 130 A.L.R. 1220; Red v. Bounds, 122 Texas 614, 63 S.W. 2d 544. It hardly appears reasonable that the Legislature intended to protect a policeman's employment more closely than it protects his right to life and liberty when charged with a criminal offense.

The majority speculates that the Legislature, by adoption of this provision, may have thought it necessary to shield the members of the police from harrassment. It will probably come as a surprise to responsible city officials that the Legislature would anticipate such conduct on their part. The purpose of the statute as announced by the Legislature affords no such deduction. Be that as it may, I am not at all apprehensive of fancied

successive suspensions which the majority say might defeat the protection that the law provides for the rights of members of the fire and police departments and particularly so because of the six months' limitation and the requirement that if the charges are not sufficient and proven the employee will be restored to duty with full pay. It does not seem probable at all that city officials would attempt to harrass by successive suspension followed by restoration to duty and full pay. Some might doubt that all pay and no work would constitute an effective mode even if harrassment were desired.

I agree with the Court of Civil Appeals that the act contemplates prompt and correct action, but there is no reason to surmise that the allowance of new charges would permit "a series of improper suspensions, faulty charges, successive appeals, dismissals or withdrawals and reinstatements, until a valid charge is ultimately stated." The mandate in the statute, that no acts may be complained of that did not occur within six months immediately preceding the date of the suspension, would effectively curtail that. On the other hand, the construction given by the majority prevents a hearing ever being had on these serious charges and the correct decision rendered by the Commission, and all because of a technical objection to the first set of charges raised by the officer himself.

The majority says: "Even assuming, however, that the statute does not prohibit the filing of a second set of charges, it contains another limitation," namely that a written statement of the charges must be filed within 120 hours after the date of suspension. I think this adds no force to the conclusion reached by the majority. The slate had been wiped clean by the restoration of the officer with full pay and the dismissal of the first set of charges. The officer was then suspended. New "original" charges were preferred within 120 hours of the second suspension as provided by Section 16, and within six months from the occurrence of the acts complained of.

Section 17 provides for appeal to the Commission on the filing by the officer of a statement denying the truth of the charges as made or excepting to the legal sufficiency of such charges and asking for a hearing by the Commission. The statute does not detail the procedure to be followed if the charges are held to be legally insufficient, but impliedly after the reinstatement of the officer with pay for time lost new charges could be preferred within the six months' period of limitation.

In my opinion the writ of mandamus applied for should not issue.

Opinion delivered February 18, 1959.

Rehearing overruled March 25, 1959.