CITY OF DESOTO, Texas, Petitioner,

v.

Justin WHITE, Respondent.

NO. 07–1031.

Supreme Court of Texas.

Argued Dec. 11, 2008.

Decided June 19, 2009.

Peter G. Smith, Amber L. Slayton, Braden Ward Metcalf, Nichols Jackson Dillard Hager & Smith, LLP, Dallas, TX, for Petitioner.

Lance Franklin Wyatt, Attorney At Law, Arlington, TX, Rhonda Elaine Cates, Law Office of Rhonda E. Cates, PLLC, Garland, TX, Randy Doubrava, Texas Municipal Police Assn., Austin, TX, for Respondent.

Justice GREEN delivered the opinion of the Court.

A police officer who has been suspended from duty has a right to appeal that action to either a civil service commission or to an independent, third-party hearing examiner. If the officer appeals to a hearing examiner, his ability to seek further review in a district court is severely limited. The suspended police officer in this case elected to appeal to a hearing examiner, but the City failed to inform him of the appeal limitation, as it was required to do by statute. The court of appeals concluded that the notification requirement is jurisdictional, and that its omission deprives a hearing examiner of authority to hear an appeal. 232 S.W.3d 379, 383–84. However, we hold that the pre-appeal notice provision is not jurisdictional. Accordingly, we reverse the court of appeals' judgment.

## I

Justin White, a member of the DeSoto Police Department, was suspended following two internal investigations which the Department alleged revealed improper conduct. The police chief delivered a letter of indefinite suspension to White, alleging that he abused sick time policy, lied to an investigator, and interfered with a prosecution, all of which violated numerous department policies. The letter met almost all of the applicable requirements required by statute. *See generally* TEX. LOC. GOV'T CODE §§ 143.001–.363. It was issued timely, and it notified White that an appeal had to be filed with either the Civil Service Commission or an independent third-party hearing examiner within ten days of receipt. *See id.* §§ 143.052(c), (d); .057(a). However, the letter did not notify White that an appeal to a hearing examiner would limit his ability to seek further review with a district court, as required by the Code. *See id.* § 143.057(a), (j).

White elected to appeal the suspension to a hearing examiner, where he was represented by counsel. As soon as the hearing began, White complained that the examiner was without jurisdiction to hear his appeal because the City's letter failed to notify him of the appeal limitation, as required by the Code. In an attempt to rectify the omission, the examiner offered White an abatement, a continuance, and the opportunity to change his election, all of which White refused. The examiner then proceeded with the hearing, finding that jurisdiction was proper, as the City had substantially complied with the notice requirements under the Code. After the

hearing, the examiner upheld White's suspension.

White filed suit in district court, arguing that the examiner was without jurisdiction to hear his appeal. *See id.* § 143.057(j) (permitting judicial review of hearing examiner decision on grounds that the examiner was without jurisdiction). The trial court agreed, granting summary judgment in favor of White and ordering the City to reinstate White, correct his employment records, and pay his attorney's fees. The court of appeals affirmed, holding that the notice requirements under the Code were jurisdictional, and that substantial compliance with those requirements did not suffice. 232 S.W.3d at 383–84. The court of appeals also held that White could recover attorney's fees under the Code. *Id.* at 384.

The City petitioned the Court, arguing: (1) the notice provision is not jurisdictional; (2) even if it is jurisdictional, substantial compliance satisfies the notice requirements under the Code; and (3) if White is entitled to relief, the trial court's grant of attorney's fees exceeded the remedies available under the Code. We agree with the City that notice of the appeal limitation as required by section 143.057(a) is not jurisdictional. Therefore, we need not reach the City's other two issues.

## II

Chapter 143 of the Local Government Code, known as the Fire Fighter and Po-lice Officer Civil Service Act, outlines the disciplinary process by which a municipality may suspend an officer and how that officer may appeal the suspension. TEX. LOC. GOV'T CODE §§ 143.051–.057.[1] A police department may suspend an officer for a violation of civil service rules. *Id.* § 143.052(b). The officer may then appeal the suspension to either the Fire Fighters' and Police Officers' Civil Service Commission, or an independent third-party hearing examiner. *Id.* §§ 143.010, .053, .057(b). If the officer appeals to the Commission, the officer may seek review of the Commission's decision with a district court, which conducts a *de novo* review. *Id.* § 143.015(b). However, if the officer appeals to a hearing examiner, the officer waives subsequent review by a district court, *id.* § 143.057(c), except "on the grounds that the [hearing examiner][2] was without jurisdiction or exceeded its jurisdiction or that the order was procured by fraud, collusion, or other unlawful means." *Id.* § 143.057(j).

The Code specifies how the officer makes this appellate election. Within 120 hours of the suspension, the department head "shall ... file a written statement with the commission giving the reasons for the suspension," and also immediately deliver a copy of the statement to the suspended officer. *Id.* § 143.052(c). The statement, also referred to as a letter of

---

1. The Code distinguishes between municipalities with a population of less than 1.5 million, and those with a population of 1.5 million or more. *See, e.g.,* TEX. LOC. GOV'T CODE §§ 143.201–.209; 143.101–.135 (both subchapters addressing municipalities with population of 1.5 million or more). While there are some differences between the two schemes, the appellate process provisions are similar. *Compare id.* §§ 143.053, .057, *with id.* §§ 143.1015, .1016. Thus, our holding with regard to the non-jurisdictional nature of the notice provision applies with equal force under each scheme. *See City of Houston v.*

*Clark,* 197 S.W.3d 314, 317 n. 4 (Tex.2006) (noting that, even though the case implicated a municipality a with a population of more than 1.5 million, the decision also applied to those municipalities with less than 1.5 million people).

2. This provision uses the term "arbitration panel," rather than "hearing examiner." TEX. LOC. GOV'T CODE § 143.057(c). However, we have noted that "arbitration panel" is synonymous with "hearing examiner" in this context. *Clark,* 197 S.W.3d at 318 n. 5.

disciplinary action,[3] "must point out each civil service rule alleged to have been violated ... and must describe the alleged acts of the person that the department head contends are in violation of the civil service rules." *Id.* § 143.052(e). It must inform the suspended officer that if he chooses to appeal, he must file a written appeal within ten days[4] of receiving the letter, *id.* § 143.052(d), and that he "may elect to appeal to an independent third party hearing examiner instead of to the commission." *Id.* § 143.057(a). Of importance to this case, the letter must also inform the officer "that if [he] elects to appeal to a hearing examiner, [he] waives all rights to appeal to a district court," *id.* § 143.057(a), except on the grounds that "the arbitration panel was without jurisdiction or exceeded its jurisdiction or that the order was procured by fraud, collusion, or other unlawful means." *Id.* § 143.057(j).

Here, it is undisputed that the letter of disciplinary action failed to inform White that if he elected to appeal to a hearing examiner, his rights of review by a district court were waived, except under limited circumstances. *See id.* § 143.057(a), (c), (j). The question is whether that omission deprived the hearing examiner of jurisdiction to hear the appeal.

### III

### A

■ "The failure of a jurisdictional requirement deprives the court of the power to act (other than to determine that it has no jurisdiction), and ever to have acted, as a matter of law." *Univ. of Tex. Sw. Med. Ctr. at Dallas v. Loutzenhiser,* 140 S.W.3d 351, 359 (Tex.2004).[5] If the requirement is not jurisdictional, however, the tribunal may hear the case, although other consequences may flow from a party's failure to comply with the requirement. *Dubai Petroleum Co. v. Kazi,* 12 S.W.3d 71, 75–77 (Tex.2000); *see also Loutzenhiser,* 140 S.W.3d at 359 ("The failure of a non-jurisdictional requirement mandated by statute may result in the loss of a claim, but that failure must be timely asserted and compliance can be waived."). We recognized in *Dubai* that deeming a provision jurisdictional "opens the way to making judgments vulnerable to delayed attack for a variety of irregularities that perhaps better ought to be sealed in a judgment." *Dubai,* 12 S.W.3d at 76 (citing RESTATEMENT (SECOND) OF JUDGMENTS § 12 cmt. b, at 118 (1982)). "[T]he modern direction of policy is to reduce the vulnerability of final judgments to attack on the ground that the tribunal lacked subject matter jurisdiction." *Id.* (citing RESTATEMENT (SECOND) OF JUDGMENTS § 11 cmt. e, at 113 (1982)). Because of these consequences, we have been reluctant to conclude that a provision is jurisdictional, absent clear legislative intent to that effect. *Id.* at 75–76; *see also Igal v. Brightstar Info. Tech. Group, Inc.,* 250 S.W.3d 78, 83 (Tex.2008).

---

3. The Code refers to a "written statement" and a "letter of disciplinary action." *Compare, e.g.,* TEX. LOC. GOV'T CODE § 143.057(a), *with id.* § 143.052(d). These terms appear to refer to the same document. For purposes of this opinion, we will not make a distinction between the two and will refer to the document provided to White as a "letter of disciplinary action." *See id.* § 143.057(a).

4. An officer working for a municipality with a population of 1.5 million or more has fifteen days to file an appeal. TEX. LOC. GOV'T CODE § 143.1015(a).

5. We recently noted in that "[a]lthough the Legislature subsequently provided that the notice requirement at issue in *Loutzenhiser* was jurisdictional, the Court's reasoning [with regard to statutory analysis of alleged jurisdictional provisions] remains valid." *Igal v. Brightstar Info. Tech. Group, Inc.,* 250 S.W.3d 78, 84 (Tex.2008).

As an initial matter, White argues that *Dubai's* reasoning does not apply here because *Dubai* dealt with a court of general jurisdiction, whereas a hearing examiner is a tribunal of very limited jurisdiction as prescribed by statute. *Dubai* was a wrongful death action in which the deceased was a foreign citizen. 12 S.W.3d at 73. The plaintiff filed suit under a statute, which permitted the claim as long as the deceased's country had "equal treaty rights" with the United States. *Id.* at 74. We held that the plaintiff did not have to establish "equal treaty rights" to invoke the jurisdiction of the trial court. *Id.* at 73. In reaching this conclusion, we rejected an earlier distinction we had made when reviewing jurisdictional questions, where we differentiated between specially-created statutory claims and common-law claims. *Id.* at 76 (overruling *Mingus v. Wadley,* 115 Tex. 551, 285 S.W. 1084 (1926), "to the extent that it characterize the plaintiff's failure to establish the statutory prerequisite as jurisdictional"). Instead, we adopted an approach to jurisdictional questions designed to strengthen finality and reduce the possibility of delayed attacks on judgments, regardless of whether the claim was anchored in common law or was a specially-created statutory action. *Id.* at 75–76. Thus, White misses our focus, post-*Dubai.* We recognize that a hearing examiner is a tribunal of very limited jurisdiction, and that it exercises special functions as dictated by statute. *See* Tex. Loc. Gov't Code § 143.057. But even though the examiner hears a limited type of case, consistent with *Dubai,* our focus is to avoid a result that leaves the decisions and judgments of the hearing examiner in limbo and subject to future attack, unless that was the Legislature's clear intent. *See Igal,* 250 S.W.3d at 84.

White argues that in an administrative context, the possibility of a delayed attack on a judgment is not present, in part because a later challenge to subject-matter jurisdiction is limited to the appeal process outlined in the Code. *See* Tex. Loc. Gov't Code § 143.057(j) (permitting appeal to district court from hearing examiner "only on the grounds that the [hearing examiner] was without jurisdiction or exceeded its jurisdiction or that the order was procured by fraud, collusion, or other unlawful means"). White cites no authority for this proposition, and we are not convinced that a delayed attack on an administrative judgment is an illusory concern. *See, e.g.,* Restatement (Second) of Judgments § 12 cmt. e., at 123 (1982) ("There remain courts and administrative tribunals staffed by judges untrained in law or whose jurisdiction is so narrow as to be nearly ministerial. The opportunity to challenge subject matter jurisdiction in such a forum may therefore be inadequate. When this is so, a challenge to subject matter jurisdiction may properly be permitted through subsequent attack on the judgment."); *see also Igal,* 250 S.W.3d at 83 (applying *Dubai's* reasoning in an administrative context).

Consistent with *Dubai,* then, we begin with the presumption that the Legislature did not intend to make the notice under section 143.057(a) jurisdictional; a presumption overcome only by clear legislative intent to the contrary.

## B

■ To determine whether a statutory requirement is jurisdictional, we apply statutory interpretation principles. *Igal,* 250 S.W.3d at 84. As with any statutory provision, our goal is to ascertain legislative intent by examining the statute's plain language. *F.F.P. Operating Partners, L.P. v. Duenez,* 237 S.W.3d 680, 684 (Tex. 2007). We review this statutory interpretation question de novo. *Id.* at 683.

"Since the Legislature is bound to know the consequences of making a requirement jurisdictional, one must ask, in trying to determine legislative intent, whether the Legislature intended those consequences." *Loutzenhiser*, 140 S.W.3d at 359.

■ We consider a number of factors in determining whether the Legislature intended that a provision be jurisdictional. *See generally Helena Chem. Co. v. Wilkins*, 47 S.W.3d 486, 495 (Tex.2001). But, as with any statute, we begin with the text. *Meritor Automotive, Inc. v. Ruan Leasing Co.*, 44 S.W.3d 86, 89 (Tex.2001); *Helena Chem.*, 47 S.W.3d at 493. Section 143.057(a) provides:

> In addition to the other notice requirements prescribed by this chapter, the written notice for a promotional bypass or the letter of disciplinary action, as applicable, issued to a fire fighter or police officer must state that in an appeal of an indefinite suspension, a suspension, a promotional bypass, or a recommended demotion, the appealing fire fighter or police officer may elect to appeal to an independent third party hearing examiner instead of to the commission. *The letter must also state that if the fire fighter or police officer elects to appeal to a hearing examiner, the person waives all rights to appeal to a district court except as provided by Subsection (j).*

Tex. Loc. Gov't Code § 143.057(a) (emphasis added). Subsection (j) states the limited exception: "[a] district court may hear an appeal of a hearing examiner's award only on the grounds that the [hearing examiner] was without jurisdiction or exceeded its jurisdiction or that the order was procured by fraud, collusion, or other unlawful means." *Id.* § 143.057(j).

Section 143.057(a) clearly requires that the letter notify the officer of the appeal limitation. It provides that the letter *must* inform the officer of the limitation. *Id.* § 143.057(a). The Code Construction Act explains that " 'must' creates or recognizes a condition precedent," Tex. Gov't Code § 311.016(3), and we have recognized that "must" generally means mandatory. *Helena Chem.*, 47 S.W.3d at 493. The rest of the Code and its apparent objective also indicate this provision is mandatory. *See id.* at 494 ("To determine whether the Legislature intended a provision to be mandatory or directory, we consider the plain meaning of the words used, as well as the entire act, its nature and object, and the consequences that would follow from each construction."). The Code establishes two alternative means for officers to appeal: to the Commission or to the hearing examiner. Tex. Loc. Gov't Code §§ 143.053, .057. These two avenues of appeal, however, diverge on the right to further judicial review. If the officer does not know of these limitations, then the officer is unable to properly assess which appeal route to take. This notice protects the officer's appellate rights. Thus, we hold that the notice provision under section 143.057(a) is mandatory.

■ But "just because a statutory requirement is mandatory does not mean that compliance with it is jurisdictional." *Albertson's, Inc. v. Sinclair*, 984 S.W.2d 958, 961 (Tex.1999). The Code does not contain any explicit language indicating that this notice requirement is jurisdictional. White points to another provision, section 311.034 of the Government Code, and argues that it provides the language necessary to deem this notice requirement jurisdictional. Section 311.034, part of the Code Construction Act, provides: "Statutory prerequisites to a suit, including the provision of notice, are jurisdictional requirements in all suits against a governmental entity." Tex. Gov't Code § 311.034. But this provision does not control in this

case. First, this provision does not apply to the construction of all statutes. Section 311.034 specifically addresses waivers of sovereign immunity, an issue not implicated here. *See id.* ("In order to preserve the [L]egislature's interest in managing state fiscal matters through the appropriations process, a statute shall not be construed as a *waiver of sovereign immunity* unless the waiver is effected by clear and unambiguous language." (emphasis added)). Also, the notice requirement here is not a statutory prerequisite to suit. As noted below, the statute requires notice, but it does not specifically mandate it as a prerequisite to suit or appeal. Thus, the text of the statute does not indicate that the Legislature intended the provision to be jurisdictional.

We have also looked for "the presence or absence of specific consequences for noncompliance" in determining whether a provision is jurisdictional. *Helena Chem.,* 47 S.W.3d at 495. Here, the statute does not provide a specific consequence for noncompliance. *See generally* TEX. LOC. GOV'T CODE §§ 143.001–.363. As a comparison, section 143.052(e) provides that the letter of disciplinary action provided to the officer "must point out each civil service rule alleged to have been violated . . . and must describe the alleged acts." *Id.* § 143.052(e). Subsection (f) provides the remedy: "If the department head does not specifically point out in the written statement the act or acts of the . . . police officer that allegedly violated the civil service rules, the commission shall promptly reinstate the person." *Id.* § 143.052(f). By arguing that the City's failure to provide the required notice is jurisdictional, White seeks the same remedy provided for in section 143.052(f)—dismissal. In fact, the trial court dictated this very result in its order granting summary judgment in favor of White. However, "[w]hen the Legislature includes a right or remedy in one part of a code but omits it in another, that may be precisely what the Legislature intended," and "we must honor that difference." *PPG Indus., Inc. v. JMB/Houston Ctrs. Partners Ltd. P'ship,* 146 S.W.3d 79, 84 (Tex.2004). So, we must assume the Legislature did not intend that a dismissal be the consequence for noncompliance.

Finally, we look to "the consequences that result from each possible interpretation." *Helena Chem.,* 47 S.W.3d at 495. One possible interpretation is that section 143.057(a)'s notice requirement is jurisdictional. The consequence of this interpretation is evident in this very case. The trial court's order reinstated White, permitting him to rejoin the police force without an adjudication of the very serious allegations against him.[6] Reinstating an officer in this situation is troubling, given the vital role of police officers and fire fighters in our society, and the need for continued public trust in the exercise of their duties. *See* Code Construction Act, TEX. GOV'T CODE § 311.021(5) ("In enacting a statute, it is presumed that . . . public interest is favored over any private interest"). This cannot be the result the

---

**6.** The City alleged White abused the Department's sick time policy during a holiday weekend and subsequently lied to a supervisor about his actions. The City states that, due to an internal investigation which found White was untruthful, the District Attorney's office was forced to alert defense counsel in all pending cases in which White was a potential witness, which the City states lead to the dismissal of twenty-one pending criminal cases. The City also alleges that White asked "an Assistant District Attorney to reduce or drop charges against an individual he had arrested for driving while under the influence of alcohol" and that after failing to appear at trial, White informed the prosecutor "that he had become friends with the suspect and despite having effectuated the arrest, he could no longer testify that the suspect was intoxicated."

Legislature intended, especially where an interpretation which concludes that the provision is not jurisdictional would still protect the officer's appellate rights, as discussed below.

## C

White urges that our decision in *City of Temple Firemen's and Policemen's Civil Service Commission v. Bender* precludes a finding that the notice provision is non-jurisdictional. 787 S.W.2d 951 (Tex.1990) (per curiam). *Bender* recognized the need for strict adherence to the Code when an officer invokes the Civil Service Commission appellate process. *See generally id.* at 951. In *Bender,* the question was "whether a civil service commission's jurisdiction has been invoked under section 143.010(b) of the Texas Local Government Code if a fire fighter's or police officer's notice of appeal fails to allege the basis of the appeal." *Id.* Section 143.010(b) provides:

> The appeal must include the basis for the appeal and a request for a commission hearing. The appeal must also contain a statement denying the truth of the charge as made, a statement taking exception to the legal sufficiency of the charge, a statement alleging that the recommended action does not fit the offense or alleged offense, or a combination of these statements.

TEX. LOC. GOV'T CODE § 143.010(b). Officer Bender was suspended indefinitely and attempted to appeal to the Civil Service Commission. *Bender,* 787 S.W.2d at 951–52. His attorney mailed a letter to the Commission, advising of Bender's intention to appeal, but the letter failed to list the specific grounds for appeal as required by section 143.010(b). *Id.* at 952. After the city attorney notified him of the omission, Bender submitted an amended notice, which the Commission refused as untimely

under the ten-day deadline imposed by the Code. *Id.; see also* TEX. LOC. GOV'T CODE § 143.010(a). We held that "one of the statements contained within section 143.010(b) is required to be included in a notice of appeal in order to invoke the jurisdiction of a civil service commission," and because his first notice did not, Bender failed to invoke the Commission's jurisdiction. *Bender,* 787 S.W.2d at 952. We then held that Bender's amended notice of appeal also failed to invoke the jurisdiction of the Commission because the ten-day deadline under section 143.010(a) "is mandatory and must be strictly followed." *Id.* at 953.

White argues *Bender* dictates that a failure to meet a particular statutory requirement must be jurisdictional. But *Bender* focused on whether the officer had timely and properly invoked the Commission's jurisdiction—ensuring the case was properly before the Commission. *Id.* at 951–53; *see also Essenburg v. Dallas County,* 988 S.W.2d 188, 189 (Tex.1998) (per curiam) (citing *Morrow v. Corbin,* 122 Tex. 553, 62 S.W.2d 641, 644 (1933) and noting that the hallmark of a jurisdictional provision is that it "seeks to assure the appropriate body adjudicates the dispute"). Under the Civil Service Code, only a police officer or fire fighter may invoke the appeals process. *See* TEX. LOC. GOV'T CODE §§ 143.010(a); .057(a); *see also City of Houston v. Clark,* 197 S.W.3d 314, 318 (Tex.2006). Thus, when it comes to invoking the jurisdiction of the Commission or hearing examiner, the focus must always be on the officer's actions. The City's notice letter does not invoke the appeals process. It is similar to a pre-suit notice requirement, which is not jurisdictional. *See, e.g., Hines v. Hash,* 843 S.W.2d 464, 469–70 (Tex.1992) (holding that defendant had waived pre-suit notice requirement under the Deceptive Trade Practices–Consumer Protection Act by failing to request

an abatement). Thus, *Bender* is distinguishable.[7]

## D

For these reasons, we hold that the City's failure to provide the mandatory notice under section 143.057(a) did not deprive the hearing examiner of jurisdiction to hear White's appeal.

## IV

■ Having determined that the notice provision is not jurisdictional, we must determine the proper remedy, if any, for the City's failure to comply. "When the statute is silent as to the consequences for noncompliance, we look to the statute's purpose in determining the proper remedy." *Helena Chem.*, 47 S.W.3d at 493. Section 143.001(a) provides:

> The purpose of this chapter is to secure efficient fire and police departments composed of capable personnel who are free from political influence and who have permanent employment tenure as public servants.

TEX. LOC. GOV'T CODE § 143.001(a). As discussed above, dismissal of the case and the charges against the officer cannot be the remedy. The statute's purpose of seeking "efficient" and "capable" personnel is not served by dismissing the case and permitting potentially unfit officers to return to the force without a determination of the substance of the complaint against them. At the same time, the possibility of imposing no consequences is troubling, given that the required notice is intended to inform the officer of important appellate rights. The provision is certainly an important one: "The Legislature's apparent purpose in [enacting the provision] was to ensure that fire fighters and police officers are fully aware of a significant consequence that will result if they elect to have an independent hearing examiner, rather than the Commission, hear their appeal." *Clark*, 197 S.W.3d at 319–20. Thus, we believe the statute requires some remedy.

An abatement is generally appropriate to cure pre-suit notice deficiencies. *Hubenak v. San Jacinto Gas Transmission Co.*, 141 S.W.3d 172, 184 (Tex.2004) (holding that abatement, for a reasonable period of time, rather than dismissal, is appropriate remedy until parties meet the pre-suit requirement that they are "unable to agree" on the amount of damages in a condemnation proceeding); *Hines*, 843 S.W.2d at 468 (holding that abatement is proper remedy for failure to give pre-suit notice in Deceptive Trade Practices–Consumer Protection Act case); *Schepps v. Presbyterian Hosp. of Dallas*, 652 S.W.2d 934, 938 (Tex.1983) (holding that abatement is appropriate for failure to give notice in health care liability claim). We recognize the statute here is unique. Normally, the party that eventually files suit is required to provide pre-suit notice. *See, e.g., Hines*, 843 S.W.2d at 465. Under the Civil Service Act, howev-

---

7. Two other cases cited by White are distinguishable for the same reasons. *See City of Lubbock v. Elkins*, 896 S.W.2d 346, 352 (Tex. App.-Amarillo 1995, no writ) (citing *Bender*, 787 S.W.2d at 953, and holding that an officer's failure to file an appeal within ten days of receiving a copy of the written statement of charges deprived the Commission of jurisdiction under section 143.052(d)); *City of Plano Firefighters' & Police Officers' Civil Serv. Comm'n v. Maxam*, 685 S.W.2d 125, 128 (Tex. App.-Dallas 1985, writ ref'd n.r.e.) (holding that because the officer failed to list the specific basis for appeal as required under the Civil Service Code, the Commission lacked jurisdiction to hear the appeal). Each of these cases, including *Bender*, were issued prior to *Dubai*, where we extended the presumption against jurisdictional findings from common-law claims to statutory actions. *See Dubai*, 12 S.W.3d at 75. We note this, not to call into question *Bender's* continuing applicability, but rather, to emphasize the proper focus in this jurisdictional inquiry.

er, the City provides notice, and then the officer appeals. We nonetheless conclude that an abatement is the appropriate remedy because it cures the notice omission: it allows the City to notify White of his appellate rights without dismissing a case against a potentially unfit officer, and it allows White an opportunity to make an appellate election with full knowledge of the consequences of choosing each path.

White argues the statute does not permit an abatement because a ten-day election deadline is imposed on White, a deadline long since passed. *See* TEX. LOC. GOV'T CODE § 143.052(d) ("[T]he [fire fighter or police officer] must file a written appeal with the commission within 10 days after the date the person receives the copy of the [disciplinary] statement."). He contends that the abatement remedy, or a dismissal allowing him to make a new election after the City provides the appropriate notice, is precluded by our decisions in *Bichsel v. Carver*, 159 Tex. 393, 321 S.W.2d 284 (1959), and *Bender*, 787 S.W.2d 951. We disagree, and hold that an abatement is appropriate under the Code, as well as under *Bichsel's* and *Bender's* analyses.

In *Bichsel*, we analyzed a City's ability to amend a written statement filed with the Civil Service Commission. 321 S.W.2d at 285. The chief of police suspended Officer Carver, alleging that he violated police department rules. *Id.* Carver appealed to the Commission, arguing that the charges were legally insufficient because the Code required an allegation that the officer violated the civil service rules. *Id.* The City

agreed and withdrew the charges, reinstated Carver, and then the Chief re-suspended him the following day. *Id.* The City then filed a second set of charges, this time properly alleging a violation of the civil service rules. *Id.* Before the Commission could hold a hearing, Carver sought injunctive and mandamus relief in district court, which was granted. *Id.* We held that the City could not amend the original charges, as the Code prevented it: "In any Civil Service hearing hereunder, the department head [the Chief] *is hereby restricted to his original written statement and charges which shall not be amended.*" *Id.* at 286 (citing section 16 of the Fireman's and Policeman's Civil Service Act) (emphasis in original).[8] We reasoned that a second set of charges were equivalent to an amendment to the original written statement, which was prohibited under the Code. *See id.* at 286–87. We also stated that, even if the second set of charges were considered new, "original" charges, these would be barred by the 120–hour deadline for filing charges following the suspension. *Id.* at 287.[9] We summarized the barriers to any new or amended charges:

> If the new charges be regarded as corrections to the original charges arising out of the same incident, they were invalid under that part of the statute prohibiting amendment of the charges. If they were new 'original' charges arising out of the same incident, they came long after 120 hours from Carver's suspension on September 19. They were thus filed too late.

**8.** *Bichsel* analyzed former section 16 of the Civil Service Act, which is now codified in substantially similar form at section 143.053(c) of the Local Government Code. 321 S.W.2d at 286; *see also* TEX. LOC. GOV'T CODE § 143.053(c).

**9.** The 120–hour rule is now codified at section 143.052(c) of the Local Government Code. TEX. LOC. GOV'T CODE § 143.052(c) ("If the

department head suspends a fire fighter or police officer, the department head shall, within 120 hours after the hour of suspension, file a written statement with the commission giving the reasons for the suspension. The department head shall immediately deliver a copy of the statement in person to the suspended fire fighter or police officer.")

*Id.* The dissent pointed out a third barrier: new, "original" charges would likely be precluded by the rule that the department may not suspend an officer for acts that occurred more than six months (now 180 days) prior to the suspension. *Id.* at 290 (Culver, J. dissenting).[10] Thus, *Bichsel* laid out a strict rule against amended letters of disciplinary action, and recognized the strict time constraints preventing the use of replacement letters. 321 S.W.2d at 287.

■ *Bender* set out its own strict rules. As discussed above, we held in *Bender* that the ten-day deadline to elect whether to appeal to the Commission or to the hearing examiner "is mandatory and must be strictly followed." 787 S.W.2d at 953. Thus, *Bichsel* and *Bender* both require strict adherence to the Code's requirements.[11] *Bichsel* restricts the City to its original letter in proceedings before the Commission, while *Bender* requires that appellants (police officers and fire fighters) strictly adhere to the appeal invocation requirements. Nonetheless, an abatement is permissible under *Bichsel's* and *Bender's* frameworks. We find nothing under the Code to prevent the hearing examiner from doing what he did in this case—offering White an abatement and a chance to change his election, having full knowledge of the appeal limitations. An amended letter of disciplinary action is not necessary, as long as the officer has actual knowledge of the appeal limitation when he makes his election. The purpose of the notice provision is satisfied by ensuring the officer has this knowledge in some way, prior to making the election. *See Clark,* 197 S.W.3d at 319–20 (finding that the purpose of the provision "was to ensure that fire fighters and police officers are fully aware of a significant consequence"). During the abatement, should the officer choose to change his election and appeal to the Commission, the hearing examiner may dismiss the case, so that the officer is permitted a reasonable time to appeal to the Commission. The Code requires an appeal within ten days of the notice of suspension, a requirement strictly enforced in *Bender. See* Tex. Loc. Gov't Code § 143.010(a); *Bender,* 787 S.W.2d at 953. But in interpreting this deadline, we must presume the Legislature intended "a just and reasonable result" and "a result feasible of execution." Tex. Gov't Code § 311.021(3), (4). Therefore, we hold that *Bender* applies when the officer's failure to appeal within the ten-day deadline is attributable to the officer, but when, as here, the officer's failure to appeal within the deadline is not attributable to the officer, the statute permits a reasonable extension of time.[12]

## V

■ Officer White was given an opportunity to change his election by the hear-

---

10. The 180–day rule is codified at section 143.052(h) of the Local Government Code. Tex. Loc. Gov't Code § 143.052(h) ("In the original written statement and charges and in any hearing conducted under this chapter, the department head may not complain of an act that occurred earlier than the 180th day preceding the date the department head suspends the fire fighter or police officer.").

11. We have recognized the Code's strict requirements in other contexts, stating that "[t]he full performance of all conditions established by the civil service laws is an essential prerequisite to the jurisdiction of the re-

moving body over the subject matter of the removal of an officer." *City of Sherman v. Arnold,* 148 Tex. 516, 226 S.W.2d 620, 622 (1950). In *Arnold,* the City of Sherman attempted to suspend Arnold before the newly-appointed Civil Service Commission had completed all of the steps necessary to set up the Commission—namely, promulgating rules and regulations to govern its functions. *Id.*

12. We are not presented with a situation where the officer first became aware of the appellate limitations during the midst of the hearing, or after the hearing examiner's judgment was issued. White argued from the

ing examiner before the hearing commenced. He declined. Generally, because we hold that the notice provision is not jurisdictional, we would also hold White waived any complaint of the omission, given that White had full knowledge of the appeal limitation under section 143.057(j). *See Loutzenhiser*, 140 S.W.3d at 358–59. However, we recognize that, in making his decision to decline the opportunity to change his election, White could have been reasonably relying on *Bender's* strict enforcement of the ten-day election deadline. Under these circumstances, White should be given an opportunity to make a new election. Although not directly applicable, section 16.064 of the Texas Civil Practice and Remedies Code provides us guidance. Section 16.064 suspends the limitations period when a party mistakenly, and in good faith, files suit in one court, when jurisdiction was only proper in another, so that the plaintiff has an opportunity to re-file the case. TEX. CIV. PRAC. & REM.CODE § 16.064. We conclude that the same policy reasons behind section 16.064 apply here to permit White an opportunity to make a new election. For these reasons, we remand the case to the district court with instructions to remand to the hearing examiner, so that White has an opportunity to make an appellate election with full knowledge of his appellate rights and with knowledge of our guidance in this opinion.

## VI

We reverse the court of appeals' judgment and remand the case to the district court for further proceedings in accordance with this opinion. *See* TEX.R.APP. P. 60.3 (permitting remand in the interest of justice).

---

start that the hearing examiner was without jurisdiction, at which time the examiner offered an abatement. We see nothing in the Code preventing a hearing examiner from informing the police officer or fire fighter of the appellate limitations at the start of the hearing, so as to avoid this type of situation. We also note that the Code grants the hearing examiner discretion in conducting the hearing. *See* TEX. LOC. GOV'T CODE § 143.010(g) ("the commission shall conduct the hearing fairly and impartially as prescribed by this chapter and shall render a just and fair decision"); § 143.057(f) ("the hearing examiner has the same duties and powers as the commission").