In The

*Court of Appeals*

*Ninth District of Texas at Beaumont*

_____

NO. 09-20-00053-CV
_____

CITY OF BEAUMONT, TEXAS, Appellant

V.

JAMES MATHEWS, Appellee

On Appeal from the 60th District Court
Jefferson County, Texas
Trial Cause No. A-192,887

**MEMORANDUM OPINION**

The City of Beaumont appeals from a judgment overturning an award the

parties obtained earlier in an arbitration involving an employment dispute between

James Mathews Jr.[1] and the City Beaumont. In its judgment, the trial court

---

[1]When in the trial court, Mathews filed the suit using the name "James Mathews," rather than using his formal name. No one complained of that error in the trial court, and no one complains of it here. Accordingly, we disregard the error. Tex. R. App. P. 44.1(a) (error disregarded unless the error caused the rendition of an

overturned the arbitrator's award, which favored the City, after finding the arbitrator lacked jurisdiction over the dispute and exceeded its jurisdiction when deciding the dispute. The trial court also found the City procured the award through fraud, collusion, or by employing other unlawful means. The City argues the appellate record proves, as a matter of law, that the arbitrator acquired subject-matter jurisdiction over the dispute and did not exceed his jurisdiction in resolving the arbitrable issues in the City's favor. The City also argues that no evidence supports the trial court's findings the City procured the award through fraud or collusion based on the fact that it filed a pretrial motion to dismiss the arbitration proceedings in the arbitration or because the arbitrator heard and denied its motion.

After the trial court signed the judgment in the appeal Mathews filed complaining of the award issued by the arbitrator, the City appealed. On appeal, the City filed a brief, which raises thirteen issues but all of them are based on one of three themes: (1) As a matter of law, the appellate record establishes the arbitrator possessed subject-matter jurisdiction over the dispute when it was in arbitration; (2) the appellate record proves the arbitrator did not exceed his jurisdiction when deciding the dispute as a matter of law; and (3) legally insufficient evidence supports the trial

---

improper judgment or prevented the appellant from properly presenting the case to the court of appeals).

2

court's findings that the City procured the award by engaging in acts of fraud, acts of collusion, or any other unlawful act.

For the reasons explained below, we reverse the trial court's judgment and render the judgment the law and the facts required the trial court to render: a judgment confirming the arbitrator's award.[2]

I. Background

A. The Municipal Civil Service Act

In October 2008, within days of the date the City of Beaumont, through the Chief of the City's Fire Department, notified Mathews of her decision to terminate his job, Mathews demanded arbitration. To challenge Chief Huff's decision terminating him from his job, Mathews demanded arbitration pursuant to a special arbitration proceeding known as the Municipal Civil Service Act (the Act or the Civil Service Act). The Act allows firefighters and police officers, when employed in municipalities subject to the Act, to appeal a municipality's decision terminating or suspending the officer and challenge the decision in one of two forums, either by appealing to the municipality's Civil Service Commission (an entity whose members are first chosen by the municipality's chief executive officer, subject to later approval by council), or by appealing to an independent-third-party-hearing

---

[2]Tex. R. App. P. 37.3(c).

3

examiner (whom for convenience will call a neutral arbitrator or the arbitrator), an individual the parties are to select under procedures that are also in the Act.[3] Should the firefighter appeal to an arbitrator, the Act allows either party to appeal from the arbitrator's final award by appealing the decision and award issued in the arbitration proceeding to a district court.[4] While both of the parties to the arbitration have the right to appeal the award to a district court, the Legislature severely restricted the review available to courts in the review they are authorized to conduct in deciding whether to reverse or confirm the award that resulted from the arbitration. For instance, the scope of appellate review given the district courts to review such awards does not authorize the court to review the arbitration award for legally or factually sufficiency or to decide if the evidence the arbitrator admitted in the hearing would have been admissible had the dispute been tried before a court. The Legislature created those restrictions in the Act by making arbitration awards reviewable in district courts for the purpose of allowing the district court to decide only if the arbitrator in issuing the award in arbitration "was without jurisdiction or exceeded [his] jurisdiction or that the [award] was procured by fraud, collusion, or other unlawful means."[5]

---

[3]Tex. Loc. Gov't Code Ann. § 143.053(d) (procedures for an appeal to the Civil Service Commission); § 143.057 (appeals to neutral arbitrators).
[4]*Id.* § 143.057(j).
[5]*Id.*

B. The City's Termination of its Employment Relationship with James Mathews, a Firefighter

In October 2008, Ann Huff, at that time the Chief of the City of Beaumont Fire Department, discharged Mathews for cause after conducting a formal investigation into a rear-end collision involving Mathews that occurred on June 9, 2008. In the collision, Mathews was rear-ended by Jeremiah Freeman shortly after stopping with other traffic at a light. After the wreck, Mathews followed Freeman from the scene of the collision. When Freeman stopped, Mathews reportedly got out of his truck, approached Freeman, and struck Freeman one or more times with his fist.

Even though the collision occurred while Mathews was not on duty, many of the rules of conduct the Department has apply to firefighters even when they are not on duty. Mathews has never disputed the rules of conduct applied to him in the June 2008 collision, even though the collision occurred when he was not on duty. Chief Huff opened a formal investigation into Mathews' alleged altercation with Freeman. Mathews told Chief Huff that while he followed Freeman, he never struck him with his fist when Freeman stopped on an access road next to Interstate 10. Mathews claimed that he simply held Freeman on the ground while waiting for police. Yet Chief Huff learned later that one of the police officers who came to the scene where Freeman stopped his truck claimed he saw Mathews strike Freeman several times

5

with his fist before the officer separated the men when breaking up their fight. Mathews told Chief Huff he followed Freeman because he thought Freeman was intoxicated, was a danger to others driving on city streets, and that's why he decided to follow Freeman from the scene of their collision to the location where Freeman stopped.

The arbitrator admitted and considered a written statement that Freeman gave police about what he said occurred on June 9. According to Freeman, after leaving the scene of the rear-end collision, he stopped his truck on an access road to Interstate 10. After stopping and leaving the truck, Mathews ran up to him and began hitting him with his fist.

The City's 911 operator received several calls from callers who reported seeing a red truck (later shown to be the truck driven by Mathews) attempting to catch a white truck (the truck driven by Freeman). One of those callers told the 911 operator they saw a man get "out of the truck and [] hitting somebody." Transcripts of these phone calls, along with the police reports about the incident, were admitted into the evidence the arbitrator conducted in the appeal Mathews filed in the arbitration forum when he exercised his right to challenge Chief Huff's decision discharging him from his job.

The evidence in the appellate record also shows that Deputy Constable Donald Jackson approached a red truck and a white truck after noticing the trucks stopped

6

on an access road to Interstate 10. According to Deputy Jackson's official report, the man in the white truck (later identified as Freeman) left his truck and approached Mathews' red truck. Deputy Jackson also testified in the arbitration proceeding. At the hearing, he testified that he saw Mathews, the induvial he described as the aggressor, strike Freeman several times with his fist in a confrontation that he witnessed after stopping on the access road on June 9. Deputy Jackson's report of what he saw is among the exhibits admitted in the hearing the arbitrator conducted in Mathews' appeal. Deputy Jackson's report states: "Mathews exited as well and ran up to Freeman, Mathews began punching Freeman several times with a closed fist; striking him several times in the face. Freeman fell to the ground between the two trucks and Mathews continued punching him." When he noticed Mathews on the ground on top of Freeman, Deputy Jackson left his patrol car and then broke up the fight.

In September 2008, a Jefferson County Grand Jury indicted Mathews, charging him with an aggravated assault. The indictment for aggravated assault on the June 9 incident states: Mathews, on or about June 9, "intentionally and knowingly threatened imminent bodily injury to JEREMIAH STONE FREEMAN with the use of a deadly weapon," his truck.

On October 7, 2008, Chief Huff notified Mathews of her decision terminating his employment with the Department. Huff gave Mathews a written notice of

7

termination. The written notice explains the grounds Chief Huff relied on when she decided to discharge Mathews for cause. As to the grounds for dismissal, the formal notice of dismissal states:

(1) "conviction of a felony or other crime involving moral turpitude;"
(2) "acts showing lack of good moral character;"
(3) "conduct prejudicial to good order;" and
(4) "violation of an applicable fire or police department rule."

The language Chief Huff used in the formal notice tracks the language in the Act, which authorizes municipalities to terminate officers on any one of the grounds listed in the Act for good cause.[6]

The appellate record shows that Mathews consulted with Firefighters Local 399 before deciding what forum he wanted to hear the appeal he filed to challenge Chief Huff's decision terminating him from his job. On October 10, 2008, after consulting with his union about how to proceed, Mathews sent the Beaumont Civil Service Commission (the Commission) a notice of appeal. The notice of appeal demands that the appeal be heard by a neutral arbitrator. Mathews signed the notice of appeal, and it states:

> In accordance with the provisions of . . . Chapter 143, specifically but not limited to Sections 143.010, 143.053, 143.056, and 143.057, I hereby request a hearing before an independent third party hearing examiner."[7]

---

[6]*See id.* § 143.051(1), (6), (8), (12).
[7]The Act provides that the independent hearing examiner is to be selected by the parties from a list of qualified neutral arbitrators provided by either the American

8

In demanding his arbitration be heard by a neutral arbitrator, Mathews relied on the advice of Firefighters Local 399, which knew the Collective Bargaining Agreement (Agreement) between the City and Firefighters Local 399 authorized Mathews to challenge the City's decision to discharge Mathews to either the Commission or to a neutral arbitrator. The Agreement is in the record and allows members of Local 399 to challenge disciplinary suspension, including a firefighter's termination for cause based on one or more of the causes authorized under the Act, to discipline its firefighters. Under the Agreement, the firefighters like Mathews may "choose to file his/her appeal/grievance through either the contract grievance procedure or through the provisions of" the Civil Service Act, "but not both."

C. First Arbitration Award in 2009, Reversed on Appeal

In 2009, the appeal Mathews brought to a neutral arbitrator was decided by an arbitrator named Don B. Hays. But Hays ruled on the appeal in the arbitration proceeding and reinstated Mathews without conducting an evidentiary hearing, as

_____

Arbitration Association (AAA) or the Federal Mediation and Conciliation Service. *Id*. § 143.057(d). In the opinion, we will refer to the hearing examiner, selected by the parties under the procedures in the Act, as the neutral arbitrator or as the arbitrator, as for our purposes the terms independent-hearing examiner, neutral arbitrator, and arbitrator all mean the same thing.

required by the Act.[8] The City appealed the award and decision issued by Hays to the 60th District Court, complaining that Hays exceeded his jurisdiction by rendering an award without first conducting an evidentiary hearing. The 60th District Court rejected the argument, and the City, in 2011, appealed the trial court's judgment confirming the arbitration award in an appeal decided in the Ninth Court of Appeals.[9] In the 2011 appeal, the Court held that Hays exceeded his jurisdiction by reinstating Mathews without first conducting an evidentiary hearing in the arbitration forum.[10] In addition, in the 2011 appeal (which we will refer to as *Mathews* I) the Court found no merit in Hays' conclusion in the arbitration proceeding (or that of the 60th District Court) that Chief Huff's notice of dismissal failed to inform Mathews of the grounds she relied on when she terminated him for cause. We specifically explained Chief Huff's formal notice notified Mathews of both the grounds for his dismissal and the rules of the Department Chief Huff relied on when she discharged Mathews for cause.[11] Consequently, in *Mathews* I, we reversed the trial court's judgment and

---

[8]*City of Beaumont v. Mathews*, No. 09-10-00198-CV, 2011 Tex. App. LEXIS 7059 (Tex. App.—Beaumont Aug. 11, 2011, no pet.) (in an appeal filed by the City from a judgment of the 60th District Court, concluding the independent hearing examiner exceeded his jurisdiction when he reinstated Mathews to his employment with the City before he conducted an evidentiary hearing in Mathews' appeal of the City's decision removing him from his job).

[9]*Id.*

[10]*Id.* at *5.

[11]*Id.* at *5-*6.

10

remanded the case to the trial court for further proceedings consistent with the Court's opinion.[12] Based on those instructions, the 60th District Court then remanded the proceedings to Hays to allow him to conduct the required evidentiary hearing before ruling on or deciding Mathews' appeal.

D. Second Arbitration Award, August 2012

On remand, the parties selected another neutral arbitrator. The parties have not explained the reasons they changed arbitrators, but neither party complained at trial or in this appeal that the second arbitrator, Richard F. Dole, Jr., was not chosen under procedure for selecting neutral arbitrators in the Act.

On remand, the City, by motion, moved to dismiss the arbitration proceedings. The City attached numerous exhibits to its motion, which argues that Mathews, by suing the City and city officials in federal court on matters related to his termination, had elected his sole remedy on his claims for wrongful discharge by seeking a remedy in federal court. The City's motion concludes that Dole, due to Mathews suing the City and its officials in federal court, did not have jurisdiction over the appeal Mathews filed in the arbitration forum.

---

[12]*Id*. at *6 (explaining that Hays reinstated Mathews without ever conducting an evidentiary hearing even though Chief Huff's notice sets out what she claimed Mathews did that violated the Fire Department's rules).

In March 2012, Dole considered the City's motion in a hearing he conducted by telephone. In a written order, Dole denied the City's motion and rejected the City's election of remedies argument, which assert Dole no longer had jurisdiction over the appeal Mathews filed to challenge Chief Huff's decision terminating him from his job.

In May 2012, Dole conducted a two-day evidentiary hearing on the merits of the issues the parties raised in the appeal Mathews filed in the arbitration forum. Ten witnesses testified in the two-day hearing. During the hearing, Dole admitted into evidence many of the same exhibits the City had attached to its pretrial motion to dismiss, the motion Dole, two months earlier, had denied. Several months after conducting the two-day final hearing, Dole issued a final award. His written decision, which fully explains his award, is forty-eight pages long. Dole's award turns on Dole's view that the preponderance of the evidence admitted in the hearing shows that Mathews struck Freeman with his fist after the men stopped their trucks. And Dole concluded, from the evidence, that Mathews violated the Fire Department's Code of Conduct based on his conclusion that Mathews did not tell Chief Huff the truth about what happened after he approached Freeman on the access road to Interstate 10 during the formal investigation she conducted to find out what happened that day.

E. Mathews' Appeal of the 2012 Arbitration Award

Two weeks after Dole issued his award, in a suit filed with the Jefferson County District Clerk, Mathews challenged Dole's decision and award by appealing to a district court, an appeal authorized by the Act. According to the Original Petition Mathews filed with the District Clerk, the trial court had jurisdiction over his appeal because Mathews "elected to appeal to an independent third party hearing examiner as provided for by [section] 143.057" of the Act.[13] Mathews asked the trial court in his petition to vacate the award that Dole issued based on Mathews' allegation that Dole, before conducting the final two-day hearing, had considered evidence in a pretrial hearing he conducted on the City's motion to dismiss. The appeal Mathews filed with the District Clerk was later assigned to the 60th District Court.[14]

In October 2013, both parties moved for summary judgment on the appeal assigned to the 60th District Court. But the trial court never ruled on those motions. Instead, in September 2019, nearly six years after Mathews filed his appeal and challenged Dole's award, the City, by motion, asked the trial court to decide the case on the evidence "submitted to the [district court]." The City argued that both parties

---

[13]Tex. Loc. Gov't Code Ann. § 143.057(j).

[14]The District Clerk first assigned Mathews' case to the 58th District Court. On Mathews' motion, the judge of the 58th District Court transferred the case to the 60th District Court, since that is the court that had handled the 2009 appeal that involved the appeal of an award in this same dispute from a different neutral arbitrator.

13

had submitted all the evidence they had and could offer nothing more than that already before the trial court in the pleadings the parties filed beginning in 2012 when Mathews filed suit.[15] In November 2019, the trial court heard the City's motion to submit the case on the record and agreed to try the case on the evidence in its file. Even so, the trial court told the parties they could supplement the record with additional evidence if they wanted to do so before the court resolved the dispute.

In December 2019 and January 2020, the parties filed more evidence with the District Clerk. In January 2020, the trial court signed a final judgment, which the judgment recites is based on the evidence in the record. In its judgment, the 60th District Court overturned the arbitrator's award and ordered Mathews reinstated to his job with back pay and benefits. To support that ruling, the 60th District Court (1) held that Dole lacked subject-matter jurisdiction over Mathews' appeal, (2) found that Dole exceeded his jurisdiction in Mathews' appeal when rendering an award based on Chief Huff's 2008 notice of dismissal rather than relying on her later, 2011 inter-office memo, which reinstated the dismissal based on this Court's ruling vacating Huff's order of reinstatement in *Mathews* I, and (3) found the City procured Dole's award "by fraud, collusion, or other unlawful means."

---

[15]To be clear, the delay between September 2012 and December 31, 2016, are not attributable to the current presiding judge of the 60th District Court, as he did not take office until January 1, 2017.

14

Later, the trial court issued written findings of fact and conclusions of law in support of its judgment. Among the trial court's findings, the trial court found that based on its review of the evidence "Mathews did not use his fist(s) to 'punch' Freeman" after Freeman rear-ended Mathews in June 2008. Shortly thereafter, the trial court signed a final judgment, which makes only minor corrections, not relevant here, to the court's earlier final judgment. The City exercised its right to appeal from the final judgment by filing a timely notice of appeal.

After perfecting its right to appeal, the City filed a brief in which it raises thirteen issues for our review. We need not address the issues separately since they revolve around redundant arguments based on one or more of the following three themes: (1) As a matter of law, the record proves that Dole, as the neutral arbitrator, had subject-matter jurisdiction over the appeal; (2) The record shows that Dole did not exceed his jurisdiction by ignoring anything relevant to a neutral arbitrator's jurisdiction over an appeal under the Act; and (3) The evidence is legally insufficient to support the trial court's findings that the City procured the award in arbitration through fraud, collusion, or by any unlawful means. Mathews argues the 60th District Court's judgment should be affirmed because that court "had jurisdiction to reverse the hearing examiner's decision and to reinstate James Mathews as a firefighter for the City of Beaumont."

II. Analysis

A. Did Dole, as the Neutral Arbitrator, Acquire Subject-Matter Jurisdiction over Mathews' Appeals?

In its first two issues, the City argues the evidence conclusively proves that Dole both acquired and possessed subject-matter jurisdiction over the appeal Mathews initiated in demanding his appeal be heard by a neutral arbitrator. In addition to addressing the City's arguments, we note that Mathews argues this Court lacks jurisdiction over the appeal in his brief. For that reason, we will also address that argument after first addressing whether Dole acquired and possessed jurisdiction over the appeal Mathews filed in the arbitration forum.

We turn first to the City's argument that the evidence conclusively proves Dole acquired subject-matter jurisdiction over Mathews' appeal. No one disputes that Mathews demanded that the appeal Mathews filed from Chief Huff's formal notice of dismissal be heard by a neutral arbitrator. That said, the parties disagree about whether the choice Mathews made was informed, meaning they dispute whether Mathews knew or was aware that he could have appealed Chief Huff's decision to the Commission rather than to a neutral arbitrator. The demand Mathews sent to the Commission includes Mathews' signature. As we have explained, the notice to appeal states that Mathews wanted to appeal her decision to "an independent third party hearing examiner[,]" which is the equivalent of a neutral

16

arbitrator selected under the procedures used to select neutral arbitrators under the Act.[16] By demanding an appeal before a neutral arbitrator, Mathews triggered the neutral-arbitrator selection process in the Act. No one claims that procedure was not followed to select Hays and Dole, the neutral arbitrators who issued the two awards we discuss here.[17]

According to Mathews (and the trial court based on its findings), the notice of dismissal Chief Huff gave him in 2008 failed to advise him he had the right under the Act to appeal before either the Commission or a neutral arbitrator. Indeed, the Act contains language that requires a municipality's notice of discipline to inform the firefighter about his right to appeal.[18] But the question is whether the lack of that information is jurisdictional when the record shows the firefighter was aware of the options that were available to him under the Act to challenge a disciplinary suspension or dismissal.

The trial court's written findings show the trial court determined that Chief Huff's formal notice was defective because she did not include information in the

---

[16]Tex. Loc. Gov't Code Ann. § 143.057(d). The Act reflects that the independent hearing examiner is to be selected by the parties from a list of "neutral arbitrators[.]" For that reason, we call Dole the neutral arbitrator or the arbitrator in the opinion since those are the more commonly used terms in opinions referring to the arbitration process.
[17]Id.
[18]Id. § 143.057(a).

17

notice that states Mathews could choose to appeal either to the Commission or to a neutral arbitrator. The trial court's findings state: "[A]s a matter of law [Chief Huff's notice to Mathews in October 2008 dismissing him from the Department] failed to provide [the] statutory notice [required by the Act.]" The trial court's findings also reflect the court found that Mathews' union, Local 399, is the entity that decided, for Mathews, where he should file his appeal. But as we have noted, the notice of appeal that Mathews filed contains his signature—it was not signed by a representative from Local 399. The trial court works to avoid that fact by finding the notice of appeal Mathews signed "was prepared for [Mathews] by the Union and Mathews relied on the Fire Chief and Union's representations regarding his right to appeal in signing the letter." According to the trial court, "[n]o one notified Mathews prior to [the signing the letter in 2008] that he had two different avenues of appeal, and that each avenue had very different consequences in regard to appellate review."

But none of these findings are supported by the record. Mathews never testified to these facts when he was in the trial court or while before a neutral arbitrator. Likewise, Chief Huff never testified that she told Mathews he could appeal only to a neutral arbitrator. Her letter does not state that he had only one option in choosing the forum where he wanted to appeal. No other witness in the proceedings that are in the appellate record shows that Mathews was unaware that he could appeal to the Commission, and his notice suggests he was fully aware of

18

his rights. In the notice of appeal Mathews sent to the Commission, Mathews cited the sections in the Act that provide firefighters with options in choosing the forum where they may appeal. While there is evidence in the record that shows Mathews consulted Local 399 before deciding where to appeal, none of that evidence shows that Local 399 was unaware of the rights firefighters have to appeal to either the Commission or a neutral arbitrator. Instead, the evidence in the record on that point shows just the opposite, as Mathews, in his live pleadings, alleged that he "elected that [he] would appeal his indefinite suspension to a Hearing Examiner provided by the American Arbitration Association" . . . "[b]ecause of the Union's distrust of the City of Beaumont's Civil Service Commission[.]"[19]

While Chief Huff's notice does not contain clear and unambiguous language regarding the options he had in appealing her ruling, it did notify Mathews that he should look to the Collective Bargaining Agreement to decide how to proceed. The formal notice of dismissal she gave Mathews states:

> You, JAMES MATHEWS, have the right to appeal this disciplinary suspension pursuant to Article XXXII of the Beaumont Firefighters' Local 399 Contract (Contractual Agreement) for the period covering February 13, 2008, to September 30, 2012, existing

---

[19]In *Proctor v. Andrews*, 972 S.W.2d 729, 736 (Tex. 1998), the Texas Supreme Court observed: "It is likely a perception of bias in favor of the City, on the part of the Civil Service Commission, that prompts officers to request that their appeal be heard under section 143.057" before neutral arbitrators rather than before commissioners, who are appointed by a city official, serving on those boards.

between the City of Beaumont and the Beaumont Firefighters Local 399 or any extension thereof.

Article XXXII, Section 1 A of the Collective Bargaining Agreement provides firefighters with options in deciding where to file their appeals, as it states:

> An employee who has a grievance concerning disciplinary action as defined in Section 1 of this article may choose to file his/her appeal/grievance through either the contract grievance procedure or through the provisions of TLGC 143 (Civil Service), but not both.

Mathews cited his Chapter 143 rights in the demand he sent to the Commission. His demand specifically references sections "143.010, 143.053, 143.056 and 143.057" of the Local Government Code. Section 143.057 provides firefighters the right to appeal dismissals by the head of the Department to a neutral arbitrator, while section 143.053 is the section that provides a firefighter with the right to appeal to the Commission.[20]

For essentially the same reasons we explained in 2017 in a mandamus proceeding that arose from an earlier order of the 60th District Court, which this court ordered the trial court to overturn, the record shows that Mathews was aware of the options he had when he chose where he wanted to litigate Chief Huff's decision to terminate him from his job.[21]

---

[20]*See* Tex. Local Gov't Code Ann. §§ 143.053 (Appeal of Disciplinary Suspension); 143.057 (Appeals to Hearing Examiners).

[21]In the mandamus proceeding, the Court conditionally granted the City's petition for mandamus and directed the 60th District Court to vacate an order that

Here, the record conclusively proves that Mathews decided after seeking advice from his union that it was in his best interest to demand his appeal be heard by a neutral arbitrator rather than going before a Commission made up of members selected by the City's City Manager and later approved by City Council.[22] Assuming Mathews delegated that decision to Local 399, as the trial court found, Mathews was bound by his choice since Local 399 was aware that firefighters have options in choosing where to challenge the City's decision to suspend or terminate a firefighter from his job.[23]

_____

would have allowed Mathews to change forums by appealing his decision to the Commission. *See In re City of Beaumont*, No. 09-17-00304-CV, 2017 Tex. App. LEXIS 10547, at *1-2 (Tex. App.—Beaumont Nov. 9, 2017, original proceeding) (explaining the "district court's order deprives the City of the immediate benefits of the statutory procedure created to resolve disputes over the suspension of firefighters").

[22] Tex. Local Gov't Code Ann. § 143.006(b).

[23]*See Los Compadres Pescadores, L.L.C. v. Valdez*, 622 S.W.3d 771, 781 (Tex. 2021) (explaining the acts of an agent bind the principal when principal gave the agent the authority the agent purportedly exercised). The City of Beaumont Charter provides that the City Manager is "the chief administrative and executive officer of the City." Article V, § 1, City Charter (available at City Clerk—City of Beaumont, last visited Jan. 20, 2022). We judicially notice the City of Beaumont's City Charter since the parties did not explain in the trial court or in their briefs who the City's "chief executive officer" is under the Charter. *See Office of Pub. Util. Counsel v. Pub. Util. Comm'n of Tex.*, 878 S.W.2d 598, 600 (Tex. 1994) ("A court of appeals has the power to take judicial notice for the first time on appeal."); *see also* Tex. R. Evid. 201(b) (allowing a court to judicially notice a fact that is not subject to reasonable dispute). While we note that Mathews signed a verification to his motion for summary judgment, which verifies the allegations of fact that he relied on in his motion for summary judgment, verified pleadings do not raise questions of fact in a trial under Texas law. *Laidlaw Waste Sys., Inc. v. City of Wilmer*, 904

21

We conclude the evidence before the trial court conclusively proves Mathews made an informed election when he demanded his appeal be heard by a neutral arbitrator.[24] Our conclusion is consistent with *City of DeSoto v. White*, 288 S.W.3d 389, 398 (Tex. 2009), where the Texas Supreme Court addressed what happens when a municipality fails to tell an officer in a formal notice that he can appeal to a neutral arbitrator in a case that involved a police officer who the record failed to show was aware that he could have appealed his suspension to a neutral arbitrator rather than to the Commission. In *White*, the Supreme Court explained the municipality's mistake in notifying the officer of his rights to appeal, while not containing the information required by the Act, was not a jurisdictional defect that prevented the arbitration from going forward.[25]

In *White*, the Supreme Court also allowed the officer to change his election, but it did so on a record where the Court could not determine if the officer knew he could have chosen to appeal the municipality's decision to a neutral arbitrator rather than what he did when he appealed the ruling to that municipality's commission. That makes *White* distinguishable, since the record in this appeal shows that both

S.W.2d 656, 660 (Tex. 1995); *Hidalgo v. Surety Sav. & Loan Ass'n*, 462 S.W.2d 540, 545 (Tex. 1971). Thus, the trial court could not have relied on any facts in that verified pleading when resolving Mathews' appeal. *Id*.

[24]*See Valdez*, 622 S.W.3d at 781; *City of Keller v. Wilson*, 168 S.W.3d 802, 816 (Tex. 2005).

[25]*City of DeSoto v. White*, 288 S.W.3d 389, 400 (Tex. 2009).

Mathews (and his union) were aware that Mathews had the right to challenge the City's decision by appealing to either of those forums.[26]

The trial court's remaining findings of fact are immaterial to the issue of whether Dole had subject-matter jurisdiction over the appeal that Mathews filed in demanding that his appeal be heard by a neutral arbitrator. While the trial court's written findings state that court relied on Chief Huff's 2011 inter-office memo as the relevant notice of dismissal, the memo Chief Huff sent Mathews does nothing more than reinstate her decision from 2008 after this Court, in *Mathews* I, vacated Hays' order, which had required the City to put Mathews back on the job. Mathews did not appeal *Mathews* I to a higher court. On remand of *Mathews* I, the trial court ordered the parties to return to arbitration in light of this Court's judgment in *Mathews* I. Because the decision Chief Huff made in 2011 reinstating her 2008 order of dismissal is not relevant to the jurisdictional issues that were before the 60th District Court, the trial court erred when it relied on that memo as the charging document that was relevant to Mathews' appeal.[27] Stated another way, after this Court vacated

---

[26]*Id*. at 401.

[27]*Mathews* I, 2011 Tex. App. LEXIS 7059, *6 ("Because the hearing examiner's decision exceeded his jurisdiction, the decision is void."). Tex. R. App. P. 43.2(d) (authorizing remands); *see also Kissman v. Bendix Home Sys., Inc.*, 587 S.W.2d 675, 677 (Tex. 1979) (denying remand where remanding would not restore the parties to the positions they occupied before the appeal when they were in the trial court).

Hays' order in 2011, the City had every right to reinstate its earlier decision since this Court vacated Hays' order and declared it void.[28] Consequently, Dole acquired the jurisdiction necessary to render a final and binding award under the Act.[29]

Next, we turn to Mathews' argument asserting this Court does not have jurisdiction over the City's appeal. He's mistaken. The authority appellate courts have to decide appeals is derived from article 5, Section 6(a), of the Texas Constitution.[30] Under the authority the people delegated to the Legislature, the Legislature gave intermediate appellate courts "jurisdiction of all civil cases within its district of which the district courts or county courts have jurisdiction when the amount in controversy or the judgment rendered exceeds $250, exclusive of interest and costs."[31] The appellate jurisdiction of the Ninth Court of Appeals extends to all district courts in Jefferson County among other counties where the Legislature authorized parties to file appeals that are heard in this Court.[32] No one claims here that the trial court's judgment awarding Mathews back pay and

[28]*Id.*

[29]*See* Tex. Loc. Gov't Code Ann. § 143.057(b), (c) (making the hearing examiner's decision "final and binding" when the officer exercises his option to appeal to an independent hearing officer).

[30]Tex. Const. art. V, § 6(a) (providing that appellate courts "shall have such other jurisdiction, original and appellate, as may be prescribed by law").

[31]Tex. Gov't Code Ann. § 22.220(a) (Supp.).

[32]*Id.* § 22.201(j) (Supp.).

24

reinstating him to his position with the Department is a judgment that awards relief in a sum smaller than $250, exclusive of interest and costs.

Because the evidence conclusively proves that Dole acquired and possessed subject-matter jurisdiction over the appeal Mathews filed in the arbitration forum, we hold the trial court erred in concluding that Dole did not have jurisdiction over the appeal. Accordingly, we sustain issues 1 and 2 to the extent they argue the record conclusively shows Dole acquired and possessed subject-matter jurisdiction over Mathews' appeal.

### B. Did Dole, as a Neutral Arbitrator, Exceed His Jurisdiction in Deciding Mathews' Appeal?

In issues 1-2, and 9-10, the City argues the trial court erred in finding that Dole exceeded his jurisdiction when rendering a final award. In issue 12, the City argues the 60th District Court exceeded its jurisdiction by overturning the award and choosing to replace the arbitration award with one of its own.

First, we will address the City's arguments claiming the evidence is legally insufficient to support the trial court's findings that Dole exceeded his jurisdiction in deciding the appeal. Under the Act, neutral arbitrators exceed their jurisdiction when they conduct the proceedings in a manner "not authorized by the Act or [a manner that is] contrary to it, or when they invade the policy-setting realm protected

25

by the nondelegation doctrine."[33] According to the City, Dole based his award on the evidence he heard during the two-day final hearing he conducted in May 2012. The City concludes the Act allows neutral arbitrators to consider evidence they admit in final evidentiary hearings in an arbitration proceeding, which is all that Dole did. While the City acknowledges it filed a pretrial motion, which is accompanied by many of the same exhibits that Dole later admitted into evidence, the City contends the Act authorizes neutral arbitrators to conduct pretrial hearings and to rule on pretrial motions. The City concludes that in choosing to conduct a pretrial hearing on the City's motion Dole did nothing to violate the Act or the non-delegation doctrine, a doctrine that permits the Legislature to create the rules of the road in how arbitration proceedings are to be handled under the Act.[34]

Turning to the trial court's finding that the City violated the Act by filing a pretrial motion and Dole violated the Act by conducting a hearing on it, we turn to what the Act says about whether arbitrators may conduct pretrial hearings. The Act allows parties to file pretrial motions, but it also requires that the parties to the arbitration serve all parties with their pretrial motions prior to hearing such motions.[35] Importantly, the Act provides: "[I]t shall not be a violation [of the Act]

---

[33]*City of Waco v. Kelley*, 309 S.W.3d 536, 542 (Tex. 2010) (cleaned up).

[34]*See City of Keller*, 168 S.W.3d at 816.

[35]Tex. Local Gov't Code Ann. § 143.1018(a) (providing that notwithstanding the Act's prohibitions on *ex parte* communications, "it shall not be a violation for

for either party to file written briefs or written motions in the case if copies were served on the opposing party."[36] Thus, the City did nothing wrong by filing a pretrial motion since the certificate of service it filed to accompany the motion states the City served the motion on Mathews' legal representative. In turn, Dole did not violate the Act by conducting a hearing on the City's motion, given that it was served on all parties prior to the hearing. Nothing before the trial court shows that Mathews has ever claimed his legal representative was not properly served with the City's motion, including all exhibits attached to the motion. The transcript from the pretrial hearing is in the record, and it shows that Dole conducted the hearing in May 2012 and that Mathews' legal representative attended the hearing for Mathews. During the hearing, the representative never claimed that the City failed to properly serve him with the pretrial motion or the exhibits that were attached to the motion. Instead, Mathews' representative told Dole that he had filed a reply to the City's motion, and he asked Dole whether Dole had received a copy. Dole told Mathews' representative that he had received it. The representative did not provide an affidavit or testify that he was never served with the City's motion, or the exhibits attached to it based on the record the parties created below.

---

either party to file written briefs or written motions in the case if the copies were served on the opposing party").

[36]*Id.*

Next, we examine the record to determine if it shows that Dole based his award on any evidence admitted outside the final hearing, a hearing he conducted over a two-day period in May 2012. Mathews' theory claiming that Dole exceeded his jurisdiction by deciding the case on evidence not admitted in the hearing hinges on what the record shows Dole considered when rendering the final award. The decision Dole issued reflects he based his ruling on his conclusion that Mathews did not testify truthfully about what occurred after confronting Freeman after the two men stopped their trucks near Interstate 10. Instead, as the sole finder of facts, Dole chose to credit Deputy Jackson's testimony about what he said he saw along with the other evidence, also admitted during the two-day final hearing, that shows Mathews struck Freeman with his fist rather than choosing to rely on testimony that Mathews presented to support his claim that he never struck Freeman with his fist following the rear-end collision involving the two men that occurred in June 2008. As factfinders, neutral arbitrators are the sole judges of the admissibility of the evidence and the weight and credibility to be given the evidence admitted during a final hearing.[37] We only note what Deputy Jackson and others said during the two-day hearing to show that Dole made his decision on the evidence admitted in the

_____

[37]*Id*. at § 143.057(j) (placing admissibility of evidence, credibility, and weight to give evidence in the hands of the neutral arbitrator and outside the scope of a court's exercise of the powers given by the Legislature to courts to review such awards).

hearing to explain why the trial court's finding that he decided the case by relying on evidence not ever admitted in the final hearing.

While the trial court conducted a legal and factual sufficiency review, the Legislature did not authorize the courts, in appeals from arbitration awards under the Act, to do so, but instead chose to restrict the review in the courts to jurisdictional grounds and claims the award was procured by fraud, collusion, or through the use of other unlawful means.[38]

Here, no reasonable factfinder could have concluded that Dole based his award on evidence never admitted in the final two-day hearing. While ten witnesses testified in the final arbitration hearing in May 2012, Deputy Constable Jackson and Mathews were the only witnesses who testified in the final hearing that they knew what happened on the access road to Interstate 10 after Freeman and Mathews stopped their trucks. Freeman, who gave police a written statement, did not testify in the hearing because he died of an unrelated cause before that hearing occurred. Certainly, no one disputes that Dole admitted the written statement that Freeman gave the police the day of the altercation in the final hearing. But Mathews persuaded the trial court that Dole could not rely on that evidence because it would have been inadmissible in a court. But the Legislature placed the admissibility of evidence

---

[38]*Id.* (providing for a restricted scope of review in the courts).

outside the scope of what it authorized district courts to review when deciding whether to overturn arbitration awards that a party obtained under the procedures in the Act. Dole also admitted a total of thirty-one exhibits into evidence in the final hearing, and the trial court had no authority to second guess Dole's ruling admitting or excluding exhibits in the two-day hearing Dole conducted as the neutral arbitrator in resolving the appeal Mathews demanded be heard and decided by that forum.

Dole's written award explains why he decided the case for the City in upholding Chief Huff's decision to terminate Mathews from the Department. The decision turned on the assessment Dole made in the hearing on the evidence he admitted during the two-day final hearing. While Mathews and Deputy Jackson gave conflicting versions about what occurred, Dole chose to credit Deputy Jackson's account over the account Mathews gave in the two-day hearing, as the award explains: "Jackson's testimony and written report are devastating to [Mathews'] credibility[.]"

The Act makes neutral arbitrators—not trial courts—the exclusive judge of the admissibility and weight to give the evidence admitted in the arbitration's final hearing.[39] Here, the written findings the trial court signed shows that court

---

[39]*Id*. § 143.057(c) (making the neutral arbitrator's award in a Civil Service Act appeal "final and binding" on both parties absent exceptions discussed in the opinion, which do not apply on the record presented here).

misunderstood the limited role it was given in reviewing neutral arbitrators' awards under the Act. We need point to only three of the trial court's findings to demonstrate the point, findings 124, 125, and 142. In these, the trial court found:

> 124: "At all material times on June 9, 2008, . . . Mathews did not use his fist(s) to 'punch' Freeman."
> 125. "Mathews did not illegally touch or civilly assault Freeman."
> 142. "Mathews did not attack or beat or hit Freeman[.]"

The trial court made 217 separate findings of fact, but all are either immaterial or completely inconsistent with the trial court's record, a record that is nearly 5,000 pages long. We selected the above findings only to demonstrate how the trial court used the wrong standard when it reviewed the award issued by Dole.[40]

As a matter of law, we conclude the record proves Dole did not exceed his jurisdiction in the manner he conducted the arbitration proceedings.[41] We further conclude that Dole's written award explains the basis for his decision and the result. For that reason, we overrule Mathews' argument claiming Dole acted contrary to the Act because he did not include language in his award like the language the Act requires of Commissions when they issue awards under the Act.[42] The section Mathews relies on to support his argument that the award does not contain findings

---

[40]*Id*. § 143.057(j).
[41]*Id*. § 143.010(g); § 143.057(f); *City of Pasadena v. Smith*, 292 S.W.3d 14, 20 (Tex. 2009); *City of Keller*, 168 S.W.3d at 814-816.
[42]*Compare* Tex. Loc. Gov't Code Ann. § 143.053(3), *with id*. § 143.057(d).

31

required by the Act relies on section 143.053 of the Act, which applies to awards by commissions, it does not apply to awards of neutral arbitrators, which are issued pursuant to section 143.057 of the Act.[43] Section 143.053's requirement of this language does not apply since it is well-settled that "'[w]hen the Legislature includes a right or remedy in one part of a code but omits it in another, that may be precisely what the Legislature intended,'" . . . "'we must honor that difference.'"[44]

Finally, Mathews argues (and the trial court found) that Dole exceeded his jurisdiction by refusing to allow Mathews to change forums and appeal to the Commission rather than to a neutral arbitrator. In Part II A of the opinion, we explained why Mathews made an informed election in 2008 when he appealed to a neutral arbitrator. For similar reasons on a more developed record, his argument lacks merit here. In conclusion, the 60th District Court's order and final judgment has deprived the City of the statutory benefit of an efficient and speedy resolution of disputes with a member of the City's fire department by creating delays in the final resolution of the dispute for what is now more than thirteen years.[45]

---

[43]*Id.*

[44]*White*, 288 S.W.3d at 396 (quoting *PPG Indus. Inc. v. JMB/Houston Ctrs. Partners Ltd. P'ship*, 146 S.W.3d 79, 84 (Tex. 2004)).

[45]In 2017, the Court made a similar observation, stating: "In Mathews' case, the district court's order deprives the City of the immediate benefits of the statutory procedure created to resolve disputes over the suspension of firefighters." *In re City of Beaumont*, 2017 Tex. App. LEXIS 10547, at *15.

To the extent the City argues the evidence is legally insufficient to support the trial court's findings and conclusion that Dole exceeded his jurisdiction when rendering a final award, we sustain issues 1-2, and 9-10.[46]

### C. Does the Evidence Support the Trial Court's Findings that the City Procured Dole's Award by Fraud, Collusion, or Other Unlawful Means?

Three of the City's issues, issues 4, 7, and 10, argue the evidence is legally insufficient to support the trial court's findings and conclusion that the City procured the award through fraud, collusion, or by using other unlawful means. In Part II A of the opinion, we explained why the City did nothing unlawful by filing a pretrial motion with exhibits, and that Dole did nothing wrong in conducting a hearing on that motion. While the trial court said doing those things was unlawful, that the findings are contrary to the law, as the Act allows parties to file pretrial motions, and it allows arbitrators to conduct pretrial hearings on them when the motion was served on the parties to the arbitration before the motion was heard.

---

[46]While not relevant to the opinion, we note the outcome Mathews sought in the arbitration challenging Chief Huff's decision asked the arbitrator to overturn her decision and to reinstate him to his position with the Department. Had that been the result of this arbitration instead of the one that occurred, and had the 60th District Court overturned the award, the law would require us to reverse a ruling by the 60th District Court to overturn the arbitrator's decision and uphold the award had it favored Mathews rather than the City.

33

The trial court's other material findings, not yet addressed, relate to that court's findings of fraud and collusion.[47] In its written findings, the trial court found the City committed fraud by choosing not to introduce evidence in the final hearing to show that Mathews was acquitted of committing the aggravated assault the State charged him with based on conduct that occurred on June 9, 2008 when the criminal case against Mathews went to trial in 2009.[48] According to the City, that evidence is legally insufficient to support the trial court's finding on grounds of either fraud or of collusion.

As relevant here, arbitration proceedings under the Act are adversarial. We find nothing in the Act that requires either party to present any particular evidence in the adversarial proceedings contemplated by the Act, whether favorable to a party or not.[49] When examining the trial court's record, we discovered the City had in fact presented the judgment of acquittal during the final arbitration hearing even though the trial court's findings reflect it did not and based on that finding ruled the City

---

[47] The trial court's fraud and collusion findings relate solely to the trial court's finding that the City failed to present evidence in the final hearing. There are no separate evidentiary findings on a collusion theory or evidence supporting one presented to the trial court in the trial. But because the trial court treated fraud and collusion as a single claim, we follow suit.

[48] The record shows the 252nd District Court rendered a judgment of acquittal when Freeman, the complaining witness, failed to appear for the trial without hearing any of the other evidence in the case.

[49]Tex. Loc. Gov't Code Ann. §§ 143.001-.363.

34

committed fraud. So even were it accurate that the City should have but did not introduce the judgment of acquittal in the final hearing (and we think it's not), the record would still not support the trial court's finding or its conclusion. To allow the parties to easily locate the judgment of acquittal that appears in the record created in the final hearing conducted before Dole, we note it can be found at page 2500 of the Clerk's Record. The judgment of acquittal is among a larger group of exhibits that the City introduced, and that Dole admitted into evidence, in the final hearing.

Moreover, the City did not rely on its claim that Mathews was convicted of a crime as the reason for justifying Chief Huff's decision. Instead, in the final hearing, the City relied on the other three grounds Chief Huff provided to Mathews to justify her decision to terminate him from his job, grounds that include Mathews' alleged violation of Fire Department Rules. The City was entitled to rely on Mathews' conduct, meaning the fact he struck Freeman, in the final hearing to prove he violated the Department's rules of conduct even though he was acquitted of aggravated assault, as alleged in the indictment from a Jefferson County Grand Jury. Even so, Mathews' conduct following the rear-end collision was still relevant in the hearing the arbitrator conducted in May 2012, as the Act provides: "Acquittal or dismissal of an indictment or a complaint does not mean that a fire fighter or police officer has

35

not violated civil service rules and does not negate the charges that may have been or may be brought against the fire fighter or police officer by the department head."[50]

The trial court's findings show that court found the City engaged in fraud by relying on evidence proving Mathews struck Freeman with his fist in the final arbitration hearing conducted in May 2012. That ruling, like many others already discussed, is completely inconsistent with what the Act provides in proving an officer violated a department rule.[51] Dole's decision even shows that he did not rely on Chief Huff's allegations claiming that Mathews was convicted of a crime when the evidence in the trial shows that was not the case. Dole's award states: The claim Mathews was convicted of a crime "disappeared when the criminal proceedings against [Mathews] were dismissed."

To the extent the City argues the evidence is legally insufficient to support the trial court's finding that the City procured the arbitration award by fraud, through collusion, or through the use of other unlawful means, issues 4, 7, and 10 are sustained.

## III. Conclusion

Under Texas law, an "appeal from a hearing examiner's decision is limited to grounds that the examiner was without jurisdiction, exceeded his jurisdiction or that

---

[50]*Id.* § 143.056(f)
[51]*Id.*

the examiner's order was procured by fraud, collusion, or other unlawful means."[52] The 60th District Court ignored these restrictions and chose to replace the arbitrator's conclusions about what the evidence shows with a conclusion and award of its own. But the Legislature gave that right to neutral arbitrators, as the sole finder of the facts by placing the arbitrator's award well outside the boundaries of a factual or legal sufficiency review. While perhaps the trial court preferred a result different from the arbitrator based on the same evidence, the Act gave the district court no right to mandate the ruling it preferred by purporting to couch its ruling in language tracking the limited scope of review provided by the Act. Here, the record contains conclusive evidence showing the arbitrator had jurisdiction over Mathews' appeal, did not exceed his jurisdiction by deciding Mathews was not a credible witness while finding Deputy Jackson was, and did not exceed his jurisdiction in any manner by rendering the award under consideration here.

While we have not addressed arguments the City raises in seven of its issues (issues 3, 5, 6, 8, and 11-13), none of its arguments in those issues, if not addressed in the issues we did address, offer the City any greater relief than that we conclude it is entitled to receive based on the arguments it raises in issues 1, 2, 4, 7, 9, and 10.[53] Accordingly, based on the Court's discussion in those six issues, we render judgment

---

[52]*Kelley*, 309 S.W.3d at 550.
[53]Tex. R. App. P. 47.1.

37

in the City's favor. We further order the arbitration award issued by Richard F. Dole, Jr. in AAA Number 70 390 0082 11 confirmed, and we render judgment enforcing that award. Finally, we order Mathews' appeal dismissed with prejudice, since that is the relief the arbitrator awarded in the final and binding award that he issued more than nine years ago, in 2012.[54]

REVERSED AND RENDERED.

_____
HOLLIS HORTON
Justice

Submitted on November 29, 2021
Opinion Delivered February 3, 2022

Before Golemon, C.J., Kreger and Horton, JJ.

---

[54]Tex. R. App. P. 43.2(c) (authorizing intermediate appellate courts to "reverse the trial court's judgment in whole or in part and render the judgment that the trial court should have rendered").